*Anna Velicky v. The Copycat Building LLC*, No. 1, September Term, 2021; Christopher *Walke v. The Copycat Building LLC*, No. 2, September Term, 2021, Opinion by Booth, J.

**LANDLORD-TENANT—UNLICENSED LANDLORD—ABILITY TO SEEK POSSESSION OF PROPERTY—TENANT HOLDING OVER.** The Court of Appeals declined to foreclose an unlicensed landlord's right to seek repossession of the landlord's property at the expiration of a tenancy under the tenant holding over statute, Maryland Code (1974, 2015 Repl. Vol., 2021 Supp.), Real Property Article ("RP") § 8-402. The Court determined that there is no reason to judicially alter the balance between a property owner's right to repossess his or her property after the expiration of a tenancy and a tenant's right to safe and habitable living conditions during a residential tenancy. That balance has been struck by the Legislature through its enactment of a comprehensive statutory framework that governs landlord and tenant relationships, including its modifications to the common law ejectment action and the remedies afforded to tenants to ensure safe and habitable housing. Under these circumstances, the Court will not preclude the availability of a statutory remedy enabling a landlord to seek repossession of the landlord's property interest at the conclusion of the tenancy. Such a holding would unreasonably interfere with property rights.

**APPEAL OF DISTRICT COURT JUDGMENT—AMOUNT IN CONTROVERSY.** When the appeal from a District Court judgment involves only a claim for repossession of property with no money judgment, the value of the right to repossession must be considered in deciding whether the appeal should have been on the record or de novo under Maryland Code (1974, 2020 Repl. Vol., 2021 Supp.), Courts and Judicial Proceedings Article ("CJ") § 12-401(f).

Circuit Court for Baltimore City
Case No.: 24-C-20-004248

Circuit Court for Baltimore City
Case No.: 24-C-20-004247

Argued: September 14, 2021

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 1 & 2

September Term, 2021

ANNA VELICKY

v.

THE COPYCAT BUILDING LLC

CHRISTOPHER WALKE

v.

THE COPYCAT BUILDING LLC

Getty, C.J.
McDonald
Watts
Hotten
Booth
Biran
Adkins, Sally D.,
  (Senior Judge, Specially Assigned)

JJ.

Opinion by Booth, J.
McDonald and Watts, JJ., dissent.

Filed: November 29, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In the instant cases, we are being asked to judicially foreclose a landlord's right to use a statutory remedy provided by the Legislature to seek the return of the landlord's possessory interest in real property at the expiration of a residential tenancy where the landlord does not have a current rental license.

The Appellee, Copycat Building, LLC ("Copycat") is a property owner who does not have a current rental license, which is required under the Baltimore City Code of Public Laws, to provide residential rental housing. The Appellants, Anna Velicky and Christopher Walke, reside in Copycat's building as month-to-month tenants. After Copycat provided the Appellants with a 60-day written notice to quit, and the Appellants refused to vacate the premises, Copycat filed tenant holding over actions in the District Court sitting in Baltimore City pursuant to Maryland Code (1974, 2015 Repl. Vol., 2021 Supp.), Real Property Article ("RP") § 8-402 (the "tenant holding over statute"). In both instances, after an appeal, the Circuit Court for Baltimore City determined that Copycat met the requisite statutory elements under the tenant holding over statute and ordered that possession of the property be returned to Copycat.

The Appellants each filed a petition for writ of *certiorari* asking this Court to hold, based on principles of public policy, that the tenant holding over statute is unavailable to an unlicensed landlord seeking a writ of possession of the landlord's property after the expiration of a tenancy. For the reasons set forth herein, we decline to adopt such a holding as we determine that the Legislature, through its enactment of a comprehensive statutory framework governing residential landlord and tenant relations, has achieved the balance between a landlord's right to recover the landlord's property interest at the conclusion of a

tenancy and a tenant's right to safe and habitable housing conditions during the tenancy. We explain the reasons for our decision herein.

## I

### Factual Background and Procedural History

Under the applicable provisions of the Baltimore City Code, a person may not rent or offer to rent a residential dwelling unit[1] without a rental license issued by the Baltimore City Housing Commissioner. Baltimore City Code ("BCC") Art. 13, § 5-4. The code provisions also prohibit a landlord from charging, keeping, retaining, or collecting rent payments unless the landlord has a rental license. *Id.* Rental licenses issued under the BCC are for a term of 1-year, 2-years, or 3-years, depending on certain "risk factors" outlined in the Code. BCC Art. 13, § 5-9. As a prerequisite to the issuance of an initial license or a renewal license, the unit must pass an inspection that certifies compliance with various housing codes. BCC Art. 13, § 5-7. Violators of the rental license law may be subject to criminal and civil penalties, including a daily fine of $1,000.00 for every day that the violation continues. BCC Art. 13, §§ 5-25, 5-26.

Copycat owns 1501 Guilford Avenue in Baltimore, which is improved with a large industrial warehouse building that was originally constructed in 1897 (the "Copycat Building" or "Building"). Considered a landmark in the Baltimore arts community, the industrial warehouse was converted into residential artist lofts that are rented to artists and

---

[1] The Baltimore City Code ("BCC") Article 13, § 5-1(g) defines "rental dwelling" as: "(1) any multiple-family dwelling; (2) any rooming house; and (3) any non-owner-occupied dwelling unit in a 1- or 2-family dwelling that is leased or rented or offered or available for lease or rental in exchange for any form of consideration."

musicians in the city's Station North Arts and Entertainment District.[2] The instant cases concern the month-to-month tenancies of two tenants, Anna Velicky and Christopher Walke, who occupy rental units in the Copycat Building.

The Copycat Building and property are owned by Copycat Building LLC, a Maryland limited liability company. The sole member of the company is Charles A. Lankford, who owned the property prior to conveying it to the limited liability company in July 2018. Prior to the change in ownership from Lankford to the single member LLC, and at the time when Appellants commenced their respective tenancies, the Building had a rental license. According to Copycat, the conveyance of the property from Lankford to Copycat triggered the loss of the rental license issued by Baltimore City.

On December 5, 2019, the Baltimore City Department of Housing and Community Development ("Department") issued Copycat two citations and associated fines—a citation and $100.00 fine for failing to complete an annual registration statement for the property, and a citation and $1,000.00 fine for failing to obtain a rental license from the Department.

---

[2] The Copycat Building's history extends back to the 1890's, when it was part of a factory complex for Baltimore's Crown, Cork & Seal Company, which produced bottle caps and bottling machines. The six-floor Victorian style building was converted to residential housing for artists and musicians in which the "[r]esidents are free to design their loft spaces as they choose. In any given room you might find a skate ramp, a band rehearsing, a photo studio, a sculpture in progress." Peek Inside The Copy Cat Building: Where Baltimore Artists Work — And Live: The Picture Show: NPR. https://perma.cc/2XTU-L2E3. According to the citations issued by Baltimore City, the Copycat building is improved with "58+ dwelling units[.]"

According to Copycat, since it learned of the lapse in its rental license at the end of 2019, it has been trying to renew the license.[3] The Property is current on its property registration.[4]

## A. Walke Tenancy in the Copycat Building and Copycat's Holding Over Suit

Appellant, Christopher Walke ("Walke"), moved into the Copycat Building in February 2017 pursuant to the terms of a written lease. On or around March 6, 2019, Walke moved into a different apartment in the Building. In connection with this internal move, Walke requested to live in the apartment on a month-to-month basis. When Walke changed units, Copycat did not offer Walke a written lease. Accordingly, under state law, because there was no written agreement (notwithstanding Walke's request for a month-to-month tenancy), the term of Walke's tenancy was presumed to be one-year from the date of first occupancy—through March 5, 2020.[5]

---

[3] At the circuit court trial in the *Walke* case, counsel for Copycat told the court that Copycat had made "good faith attempts" to secure the rental license for the multi-unit building, but that, in order to obtain the license, it was necessary to repossess some of the units to remove lofts and associated structures that had been constructed over "20 plus years" by tenants in individual units, the removal of which required "heavy construction."

[4] It appears from the applicable provisions of the BCC (as well as Copycat's former rental licenses that have now lapsed), that the City issues one rental license for a multi-unit structure that covers all units in the building. *See* BCC Art. 13, § 5-6 (stating that "*a* rental dwelling license may be issued or renewed" "only if," among other requirements, "all dwelling units and rooming units are currently registered" and "the premises have passed an inspection"). (Emphasis added) (capitalization omitted).

[5] State law requires that a landlord offering five or more dwelling units for rent use a written lease. Md. Code Real Property Article ("RP") § 8-208(a)(1). If a landlord fails to comply with the written lease requirement in subsection (a)(1), the penalty is that "the term of the tenancy is presumed to be 1 year from the date of the tenant's first occupancy unless the tenant elects to end the tenancy at an earlier date by giving 1 month's written notice." RP § 8-208(a)(2).

On May 24, 2020, Copycat sent Walke written notice of termination of his month-to-month tenancy and a 60-day notice to vacate his apartment on or before August 1, 2020. Walke did not vacate the apartment by August 1. When Walke did not vacate the apartment by that date, Copycat filed a Complaint for Tenant Holding Over in the District Court pursuant to RP § 8-402 seeking to regain possession of the apartment.

Prior to trial, Walke filed a motion to dismiss the complaint based upon Copycat's lack of licensure. The District Court denied Walke's motion, and the case proceeded to trial. The District Court declined to enter judgment for possession of the apartment, finding that, without a written lease, Copycat failed to satisfy its burden of proving under RP § 8-402 that the lease had expired.

On October 1, 2020, Copycat filed an appeal with the Circuit Court for Baltimore City. Prior to trial, Walke filed a motion to set an on-the-record appeal, contending that the appeal to the circuit court should be on the record, as opposed to a de novo proceeding. Walke also filed a motion to dismiss the complaint based upon Copycat's failure to have a rental license.[6] Both motions were denied by the circuit court. On December 2, 2020, the circuit court held a de novo hearing and granted judgment for possession to Copycat.

---

[6] During the trials in the circuit court and the District Court, Walke never alleged that the unit was unsafe or uninhabitable.

Walke filed a petition for writ of *certiorari*, which this Court granted on March 5, 2021. The petition requested that we answer the following question, which we have rephrased as follows:[7]

> Whether a landlord who does not have a current rental license may seek repossession of the landlord's property pursuant to the tenant holding over statute, Maryland Code, Real Property Article § 8-402, at the expiration of the tenancy?

As we explain *infra*, we decline to adopt the holding requested by the Appellants that would preclude the availability of the statutory remedy under these circumstances.

### B.     *Velicky's Tenancy in the Copycat Building and Copycat's Holding Over Suit*

Appellant, Anna Velicky ("Velicky") moved into an apartment in the Copycat Building in December 2015, where Velicky lived with five other co-tenants. Velicky

---

[7] Walke's petition for writ of *certiorari* requested that we answer the following question:

> Whether an unlicensed landlord leasing rental properties in a jurisdiction requiring licensure is allowed to judicially enforce its unlicensed activities in Maryland Courts?

(Capitalization omitted).

In Walke's brief, Walke has attempted to raise an additional question for our review concerning whether the circuit court erred in setting an appeal bond of $9,000.00 based upon the rental value of the premises in a tenant holding over action. This question was not presented in the petition for writ of *certiorari*. It is well-settled that this Court ordinarily does not consider an issue not raised in a petition for writ of *certiorari*. *Saint Luke Institute, Inc. v. Jones*, 471 Md. 312 n.8 (2020); *see also* Maryland Rule 8-131(b). In the rare circumstances where we address an issue not raised in the petition for writ of *certiorari*, it is "generally because the issue is implicitly contained within the question on which we granted *certiorari*." *Id.* (internal quotations and citation omitted). We determine that Walke's additional question does not fall within the exception to the general rule, and we decline to consider it.

6

executed a written lease for the apartment on August 1, 2017. Under the terms of the written lease, the lease term expired on July 31, 2018. Thereafter, Velicky became a month-to-month tenant.

On April 30, 2020, Copycat sent Velicky written notice of termination of Velicky's month-to-month tenancy and a 60-day notice to vacate the apartment on or before July 1, 2020. After Velicky did not vacate the apartment, on August 6, 2020, Copycat filed a Complaint for Tenant Holding Over in the District Court pursuant to RP § 8-402 seeking to regain possession of the apartment.

On September 22, 2020, the District Court held a hearing on Copycat's tenant holding over complaint. Prior to trial, Velicky filed a motion to dismiss based upon Copycat's lack of licensure.[8] Velicky argued that under this Court's decision in *McDaniel v. Baranowski*, 419 Md. 560 (2019), Copycat could not utilize the courts to obtain possession of its property because it did not have a rental license. The court denied Velicky's motion, concluding that *McDaniel* did not involve a tenant holding over proceeding and had no application to the case before it. After proceeding with the trial, the District Court entered judgment in favor of Velicky, finding that Copycat failed to satisfy its burden of proving under RP § 8-402 that the lease had expired.

On October 1, 2020, Copycat filed an appeal with the Circuit Court for Baltimore City. Prior to trial, Velicky filed a motion to set an on-the-record appeal, contending that the appeal to the circuit court should be on the record, as opposed to a de novo proceeding.

---

[8] Like Appellant Walke, Velicky never alleged in either the District Court or the circuit court that Velicky's unit was unsafe or uninhabitable.

7

Velicky also filed a motion to dismiss the complaint based upon Copycat's failure to have a rental license. Both motions were denied by the circuit court. On December 5, 2020, the circuit court held a de novo hearing and granted judgment for possession to Copycat. The circuit court found that: (1) there was a landlord-tenant relationship; (2) Velicky was residing in the apartment pursuant to a month-to-month tenancy; (3) Copycat had given the required notice to terminate the tenancy under the Baltimore City Code and RP § 8-402; and (4) that Copycat was not retaliating against Velicky by seeking possession. The circuit court declined to set an appeal bond and stayed judgment until the Maryland judiciary entered Phase V of the COVID-19 Phased Reopening Plan.[9]

Velicky filed a petition for writ of *certiorari*, which this Court granted on March 5, 2021. In addition to raising the same question presented by Walke, Velicky asked

---

[9] As a result of the COVID-19 pandemic, the Chief Judge of the Court of Appeals issued administrative orders in early 2020 that postponed most court proceedings and provided five phases for the gradual return to normal operations. The pertinent administrative order in effect was the Amended Administrative Order on the Progressive Resumption of Full Function of Judiciary Operations Previously Restricted Due to the COVID-19 Emergency (June 3, 2020), available at https://perma.cc/VY5V-7JDQ. This order was supplemented by the Fifth Administrative Order Restricting Statewide Judiciary Operations Due to the COVID-19 Emergency, available at https://perma.cc/9R8N-4S9E, which required courts to operate under Phase III from November 16, 2020 through December 31, 2020. A summary of the phases and their durations can be found at https://perma.cc/A6YD-XDYJ. On December 5, 2020, when the circuit court stayed the judgment for possession to Copycat, the courts were operating under Phase III of the Reopening Plan. As of April 26, 2021, all courts entered Phase V and became "fully operational." *See Id.; see also* the Second Amended Administrative Order Expanding Statewide Judiciary Operations in Light of the COVID-19 Emergency, found at https://perma.cc/AMM6-VACT**.**

8

that we address the following additional question, which we have rephrased as follows:[10]

> Whether the circuit court erred in conducting a de novo appeal as opposed to an appeal on the record under Courts and Judicial Proceedings Article § 12-401(f) where the landlord is seeking repossession of real property under the tenant holding over statute, Maryland Code, Real Property Article, § 8-402?

As we explain below, we determine that the circuit court erred in conducting a de novo trial in this case where the landlord was required to give 60 days' notice to Velicky before terminating the tenancy, and the value of the tenancy during this period exceeded the statutory threshold of $5,000.00.

## II

## Standard of Review

Pursuant to Maryland Rule 8-131(c), "[w]hen an action has been tried without a jury, the appellate court will review the case on both the law and the evidence." We will "not set aside the judgment of the trial court on the evidence unless clearly erroneous," giving "due regard" to the trial court's opportunity to "judge the credibility of the witnesses." *Id.* A trial court's findings are not clearly erroneous "if any competent

---

[10] Velicky's petition for writ of *certiorari* requested that we answer the following questions:

1. Must a landlord have a rental license to evict a tenant under RP § 8-402 when local law requires a license to operate the premises as a landlord?

2. Did the circuit court err by determining that an appeal from a tenant holding over action should be heard de novo instead of on-the-record when the 2-month value for rent for the premises exceeded the $5,000.00 threshold for on-the-record appeals under Md. Rule 7-102(b)?

9

material evidence exists in support of the trial court's factual findings[.]" *Webb v. Nowak*, 433 Md. 666, 678 (2013).

"When a trial court decides legal questions or makes legal conclusions based on its factual findings, we review these determinations without deference to the trial court." *Plank v. Cherneski*, 469 Md. 548, 569 (2020) (citations and quotations omitted). "Where a case involves the application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a de novo standard of review." *Id.* (citations and quotations omitted).

## III

### Discussion

Appellants contend that we should extend the principles articulated in *McDaniel v. Baranowski*, 419 Md. 560 (2011), to tenant holding over proceedings filed under RP § 8-402 and preclude an unlicensed landlord from utilizing the statutory remedy to seek possession of the property upon the conclusion of a tenancy. Relying upon *McDaniel* and other cases of this Court, Appellants assert that we have "consistently required contractors and vendors to demonstrate licensure" as a condition permitting a claimant to judicially enforce a contract that is premised upon business activities that require a license. *See McDaniel*, 419 Md. 560; *Harry Berenter, Inc. v. Berman* ("*Berenter*"), 258 Md. 290 (1970); *Snodgrass v. Immler*, 232 Md. 416 (1963); *Goldsmith v. Manufacturers' Liability Ins. Co. of New Jersey*, 132 Md. 283 (1918). Appellants urge us to apply the principles expressed in this line of cases to hold that a landlord may not use the tenant holding over

statute to obtain possession of the landlord's property after a residential tenancy has expired unless the landlord has a current rental license.[11]

Copycat asserts that the rationale underlying *McDaniel* is not present in a tenant holding over action—where a property owner is simply seeking to recover possession of property upon the expiration of a tenancy. Copycat argues that the line of cases relied upon by Appellants, which prohibit unlicensed professionals from enforcing contractual claims for compensation or monetary payments where a license is required for the protection of the public, are inapplicable because Copycat is not seeking to enforce a contractual obligation, nor is it attempting to collect rent or any other money damages. Copycat asserts that if this Court forecloses an unlicensed landlord's right to use the tenant holding over statute, a landlord who does not have a current rental license will have no statutory remedy available to repossess its real property interest after the expiration of a lease.

In response to Copycat's assertions, Appellants agree that under their proposed outcome, an unlicensed landlord would have no statutory remedy available to enable the recovery of possession of property after a lease has expired. To address the lack of a statutory

---

[11] In their briefs, Appellants have included excerpts of transcripts from two unrelated District Court cases involving other tenants in the Copycat Building who are not parties to the instant cases. Appellants request that we take judicial notice of limited portions of the transcripts in these unrelated cases and argue that Copycat was using the tenant holding over statute to extract unpaid rent from these other tenants. In response, Copycat objects to the Court's consideration of these transcript excerpts, noting that they are not part of the record in the instant cases, are not relevant, and that Appellants "ignore that both [tenants in the unrelated cases] consented to the landlord's possession of the property while also agreeing to have the option of signing *new* leases in exchange for retaining possession of the property." We decline to take judicial notice of limited portions of transcripts of unrelated cases involving individuals who are not parties to the instant cases.

11

remedy, Appellants assert that we should fashion a holding that would require that an unlicensed landlord file a common law ejectment action and prove the existence of "exceptional circumstances," which would enable the court,[12] through the application of equitable principles, to determine on a case-by-case basis, whether the property owner should be entitled to regain possession based upon his or her reason for not having a valid rental license.

Although the tenant holding over statute is at the center of the parties' dispute, we shall start our discussion with a brief overview of the common law ejectment action since we are being asked to judicially foreclose the statute's availability and require that unlicensed landlords proceed under a common law ejectment action. It is also useful to start our analysis with the common law because property law is derived from three sources: the common law, statutes, and the Constitution. Denise R. Johnson, Lecture, *Reflections on the Bundle of Rights*, 32 Vt. L. Rev. 247, 248 (2007).

After examining the common law, we shall discuss the statutory framework established by the General Assembly, which has effectively codified all aspects of common law ejectment actions as they pertain to landlord-tenant relationships. As we explain below, the General Assembly has enacted several statutes that balance a residential tenant's interest in safe and habitable living conditions *during the tenancy*, on

---

[12] Given that the common law ejectment action would arise in connection with a landlord and tenant relationship, the action would originate under the exclusive jurisdiction of the District Court. *See* Md. Code (1974, 2020 Repl. Vol, 2021 Supp.), Courts and Judicial Proceedings Article ("CJ") § 4-401(4) (stating that the District Court has exclusive jurisdiction in "[a]n action involving landlord or tenant, distraint, or wrongful detainer, regardless of the amount involved[]").

the one hand, against a property owner's right to seek the return of the owner's possessory interest in real property upon the *expiration of the tenancy*, on the other.

### A.      *Landlord-Tenant Relationship Under the Common Law*

"The origins of American landlord-tenant law, a subset of property law, can be traced back to the common law of England," dating back over 1,000 years. *Chateau Foghorn LP v. Hosford*, 455 Md. 462, 489 (2017).  A landlord and tenant relationship arises when an individual occupies the real property of another with permission and for a consideration, which is usually in the form of the payment of rent.  49 Am. Jur. 2d *Landlord and Tenant* § 1 (2021).  The rights of a lessee and a lessor in property that is subject to a lease are divided: the lessee has a possessory interest; and the lessor has the reversionary interest.  *Id.*  Thus, "a lessee has a present possessory interest in the premises, while the lessor has a future reversionary interest and retains fee title."  *Id.* During the tenancy, a tenant has many rights associated with his or her possessory interest, such as the covenant of quiet enjoyment.  In our modern society, a residential tenant has the right to safe and habitable living conditions, which is typically enforced through rental licensing and inspection regulations enacted pursuant to the police powers of the local government over property within its jurisdiction, as well as the rent escrow statute.

Of course, all tenancies are of a limited duration and must come to an end.  The right of possession is a very important stick in a property owner's metaphorical bundle of rights,[13]

---

[13] Justice Johnson of the Vermont Supreme Court describes "the bundle of rights" or "bundle of sticks" trope as "the dominant legal paradigm for the courts and the theory of

which must ultimately be returned to the owner upon the conclusion of the tenancy. The importance of the possessory interest is reflected in the adage, dating back to medieval times that, "possession is nine-tenths of the law."[14] The expression recognizes the practical reality that one who is in physical possession of property is in an advantageous position, even if a rightful owner has a valid claim to possession. *See, e.g.*, *Paxton v. Fisher*, 45 P.2d 903, 909 (Utah 1935) (Wolfe, J., concurring) (explaining the phrase as protecting the current occupant against the claims of a rightful owner who may "not take the law into his own hands"). At the conclusion of a tenancy, where a landlord-tenant relationship does not end with a handshake and a mutual parting of the ways, there must be a judicial process which allows the peaceful and lawful transfer of the possessory interest back to the property owner.

The common law action of ejectment was created, and later expanded, to determine who had the right to possess land. *Brown v. Housing Opportunities Comm'n of Montgomery Cty.*, 350 Md. 570, 577–78 (1998). Ejectment "originated as a very

property that is taught to American law students." Denise R. Johnson, Lecture, *Reflections on the Bundle of Rights*, 32 Vt. L. Rev. 247 (2007). She notes that "[t]he bundle of rights metaphor was intended to signify that property is a set of legal relationships among people and is not merely ownership of 'things' or the relationships between owners and things." *Id.* at 249. In her lecture, she outlines a list of eleven incidents of property ownership that have been identified as being "common to all mature legal systems." *Id.* at 253 (quotations omitted). The "bundle of rights [theory] recognizes that many individuals can have simultaneously existing, legally recognized interests[.]" *Id.* at 257. One such ownership right is the right of possession, which is given by the owner's permission to the tenant during the term of the tenancy.

[14] "[T]he phrase is generally said to have been inspired by a medieval English statute that has long predated the usages that apparently began in the sixteenth century, namely the Forcible Entry and Detainer [] statute that outlawed the forcible ejection of anyone who was in peaceable possession of a property." Carol M. Rose, *The Law is Nine-Tenths of Possession: An Adage Turned on its Head*, Arizona Legal Stud. Discussion Paper No. 14-13 (2014).

narrow remedy," and was designed to "give the lessee of property a cause of action against anyone who ejected him, including his lessor." *Pernell v. Southall Realty*, 416 U.S. 363, 373 (1974) (footnote omitted). The ejectment action employed a "variety of intricate fictions," which were used to try either title to real property, or the right to possess it. *Id.*[15]

Although the common law action of ejectment was initially utilized to allow an ousted tenant to recover possession, the law developed over time to also enable landlords to recover possession from their tenants. *Brown*, 350 Md. at 578. In *Brown*, we noted that the common law ejectment action "became cumbersome, time-consuming, and subject to bullying and delay tactics by the tenant[,]" which led to Parliament's enactment of a statute in 1731 to "deal with those problems[.]" *Id.* (citing 4 Geo. II, Ch. 28). The 1731 Parliamentary statute: (1) required tenants willfully holding over after termination of the lease to pay rent in an amount equal to double the yearly value of the property and

---

[15] In *Pernell v. Southall Realty*, 416 U.S. 363, 373 n.15 (1974), Justice Marshall described the "classic fiction" that was used in common law ejectment actions "where two persons wished to try the title to land. One of them leased it to an imaginary person and the other leased it to another imaginary person." One imaginary lessee would "eject" the other, in order to try possession of the competing imaginary leases, and the court would then "decide which of the real lessors had title to the land." *Id.* (citations omitted).

> Maryland's common law ejectment actions can be traced to 1632, when
>
> Maryland, as a Province, was granted by King Charles the first, King of England, to Lord Baltimore, by Charter constituting him absolute Lord and Proprietary of the Province of Maryland, with power to him, his heirs and assigns to grant any part of the Province, in fee simple, tail or otherwise, to be held of the Lord Proprietary, his heirs and assigns.

*See* John McHenry, *The Ejectment Law of Maryland*, 25 (1822).

15

authorized landlords to recover that rent through an action on the debt; and (2) permitted landlords having a right of reentry under their lease upon nonpayment of rent to proceed in ejectment without the need for formal demand of the rent and actual or fictional reentry of the property by merely serving or posting notice, whenever six months of rent was in arrears. *Id.* at 579. The "tenant could abort the ejectment action directly only by paying or tendering to the landlord, or paying into court, prior to trial, all rent in arears and costs." *Id.*

The 1731 statute enacted by Parliament was incorporated into Maryland law in 1776 through Article 5 of the Maryland Declaration of Rights.[16] In *Martin v. Howard County*, 349 Md. 469, 481–83 n.9 (1998), Judge Eldridge, writing for the Court, described the history of ejectment actions in Maryland, noting that "the action of ejectment, with all these fictions, continued to be the only mode of recovering the possession of land in Maryland down to the year 1870." In 1870, the Legislature abolished the fictitious parties and a fictitious lease that were utilized in common law ejectment actions, instead requiring that "the real persons who are proper as plaintiff and defendant, shall be named." *Brown*, 350 Md. at 580 (quoting 1870 Md. Laws, ch. 420).

---

[16] Article 5 of the Maryland Declaration of Rights provides in pertinent part:

That the Inhabitants of Maryland are entitled to the Common Law of England . . . and to the benefit of such English statutes as existed on the Fourth day of July, [1776] . . . except such as . . . may be inconsistent with the provisions of this Constitution; subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State . . . .

From the initial 1870 enactments and continuing up to the present, the Legislature has adopted a comprehensive statutory framework that regulates the landlord and tenant relationship. The vast majority of Maryland's landlord and tenant statutes are located in Title 8 of the Real Property Article. These various statutes regulate "different phases of the landlord and tenant relation[ship], including, among others, statutes relating to the execution, acknowledgement and recording of leases, statutes regulating the procedure for repossessing demised premises, and statutes relating to distress for rent." 14 *Maryland Law Encyclopedia*, Landlord and Tenant Relationship § 2 (2021).

In this case, we are concerned with the statutes that provide a landlord with a statutory right to recover possession of the landlord's property. As we discuss herein, the General Assembly has enacted three statutes "at different times to deal with different situations" whereby the landlord may regain possession to property that is subject to a leasehold interest, or where the leaseholder interest was terminated. *Brown*, 350 Md. at 577. These statutes, which are currently codified in Subtitle 4 of Title 8 of the Real Property Article, provide certain statutory remedies and actions other than the right of distraint for rent, and are intended to provide landlords with a statutory alternative to the common law action of ejectment. In fact, although a common law ejectment action may, in theory, still exist in the landlord-tenant context as a possible alternative to the statutory remedies, we have found no Maryland cases in which common law ejectment has been utilized by a property owner to recover possession of a residential property from a tenant after the conclusion of a tenancy.

17

The three statutes involve distinct scenarios whereby a landlord may regain possession to property, each containing different elements and processes. Two of the three statutes—failure to pay rent (RP § 8-401) and breach of lease (RP § 8-402.1)—are based upon the contractual relationship between the landlord and tenant and involve a tenant's breach of a covenant, which *may* give rise to a landlord's right to a writ of possession, depending upon certain statutory conditions and limitations. The third statute—the tenant holding over statute (RP § 8-402)—is only available where a contract has *expired.* Under the tenant holding over statute, "if the landlord proves the four requisite elements—prior possession, a lease that has expired, proper notice to quit, and the tenant's refusal to vacate—the landlord is entitled to a judgment of restitution, subject to the provisions for appeal." *Brown*, 350 Md. at 580.

We briefly discuss these three statutes, which are the primary means that a landlord may use to repossess real property from a tenant. Cases brought pursuant to these statutes all arise within the exclusive original jurisdiction of the District Court. Md. Code (1974, 2021 Repl. Vol., 2021 Supp.), Courts and Judicial Proceedings Article ("CJ") § 4-401.

### B. Landlord's Statutory Remedies for Repossession of Property

#### 1. RP § 8-401 – Repossession Arising from the Tenant's Failure to Pay Rent

When a tenant fails to pay rent, a landlord may bring an action for repossession under RP § 8-401. The current iteration of the statute originated from a statute enacted in 1937. 1937 Md. Laws, ch. 529. This action, often called a "summary ejectment action," arises pursuant to a contractual relationship between the landlord and tenant—whether

18

express or implied, oral, or written[17]—and is based upon the tenant's failure to abide by his or her contractual obligation to pay rent. "Summary ejectment proceedings empower the court to enter a money judgment for the amount of rent determined to be owing and also to issue an order for the tenant to yield possession of the premises when the jurisdiction over the tenant has been obtained." *Schuman, Kane, Felts & Everngam, Chartered v. Aluisi*, 341 Md. 115, 122 (1995) (internal quotation marks omitted).

As we have previously observed, "[s]ummary ejectment proceedings are expedited." *Cane v. EZ Rentals*, 450 Md. 597, 602 (2016). The summons issued by the court directs the tenant to appear in the District Court for a trial on the fifth day following the filing of the complaint and to show cause why the relief sought by the landlord should not be granted. RP §§ 8-401(b)(3)(i)–(ii). The court is authorized to adjourn the trial for one day to permit either party to procure necessary witnesses "in the interest of justice[,]" but may not adjourn the trial for a period of longer than one day unless all parties consent. RP § 8-401(e)(1). If judgment is entered in favor of the landlord, the statute provides that the court shall order possession to be given to the landlord within four days. RP § 8-401(e)(3).

Because the summary ejectment action is based solely upon the tenant's obligation to pay rent, if the tenant tenders the rent due, plus costs prior to the entry of judgment, the action is dismissed. If the court enters judgment in favor of the landlord, including

---

[17] RP § 1-101 defines "Lease" as "mean[ing] any oral or written agreement, express or implied, creating a landlord and tenant relationship, including any 'sublease' and any further sublease."

possession of the premises, the tenant may redeem the leased premises if the tenant tenders to the landlord the amount of the judgment, as well as any court awarded costs and fees, at any time prior to the execution of the eviction order. RP § 8-401(g)(1). The tenant's right of redemption is no longer available if the tenant has had three judgments of possession within the previous 12 months. RP § 8-401(g)(2).

Just as the time period between the filing of the complaint and the trial date is expedited, so too is the time to note an appeal. Either party may appeal the judgment of the District Court to the circuit court within four days from the entry of judgment. RP § 8-401(h)(1). If the tenant appeals, the tenant must furnish a bond to stay execution of the judgment. RP §§ 8-401(h)(2)–(3).

### 2. *Breach of Lease Action Arising Pursuant to RP § 8-402.1*

RP § 8-402.1, adopted in 1978, is the most recent enactment in the trilogy of statutes enacted to provide a statutory remedy for the recovery of a leased premises. *Brown*, 350 Md. at 576. Like the summary ejectment action described above, the statutory "breach of lease" action is also based upon a contract arising between the parties. Prior to the enactment of RP § 8-402.1, there was no statutory procedure for a landlord to obtain possession of his or her property where the tenant's breach involved conduct other than nonpayment of rent. As we noted in *Brown*, because there was no statutory process to allow a landlord to recover possession of property where the tenant's breach involved something other than nonpayment of rent, landlords relied upon the tenant holding over statute, RP § 8-402, to recover possession.

To address this gap in the statutory framework, the General Assembly enacted RP § 8-402.1. 1978 Md. Laws, ch. 478. By its enactment of the breach of lease statute, the Legislature created a "separate, self-contained District Court procedure by which landlords could recover possession of leased premises based on breaches of covenants other than the payment of rent . . . ." *Brown*, 350 Md. at 584. We explained that, by enacting RP § 8-402.1, "[t]he General Assembly was not content to have the practice of using [the holdover statute, RP] § 8-402 continued, but neither did it intend to leave landlords only to the common law action of ejectment." *Id.*

The statutory action for breach of lease is *only* available where: (1) the lease has not expired; and (2) the lease contains an express term stating that the landlord may repossess the premises prior to the expiration of the term. RP § 8-402.1. Breach of lease actions are purely possessory in nature—there is no provision in the statute that permits the landlord to recover rent or damages.

Prior to filing suit, the landlord must give the tenant 30 days' written notice that the tenant is in violation of the lease and that the landlord desires to repossess the leased premises. RP § 8-402.1(a)(1)(i)(2)(A). If the tenant or person in actual possession refuses to comply with the notice, the landlord may file a complaint in the District Court, and "[t]he court shall summons immediately the tenant or person in possession to appear before the court on a day stated in the summons to show cause, if any, why restitution of the possession of the leased premises should not be made to the landlord." RP § 8-402.1(a)(1)(ii).

The court shall award possession to the landlord only where the court "determines that the tenant has breached the terms of the lease *and that the breach was substantial and*

21

*warrants an eviction . . . .*" RP § 8-402.1(b)(1) (emphasis added).  In other words, a tenant does not automatically forfeit his or her rights under the lease because of a technical breach. Rather, as we have previously explained, the Legislature fashioned the statutory remedy upon: "(1) the long-standing principle that forfeitures for breach of covenant were not a matter of right but were subject to the intervention of equity when regarded as unfair or inappropriate, and (2) the availability of alternative remedies for landlords in breach of covenant cases, such as damages and equitable relief." *Brown*, 350 Md. at 584.  We have explained that, under the express language of the statute, "the court is entitled, and indeed directed, to weigh all of the relevant factors before declaring a forfeiture and evicting the tenant, including the actual loss or damage caused by the violation at issue, the likelihood of future violations, and the existence of effective alternative remedies for past or existing violations." *Id.*

If the court determines that the tenant has breached the terms of the lease and that the breach is substantial and warrants eviction, it shall enter judgment of restitution in favor of the landlord.  RP § 8-402.1(b)(1).  Either party may appeal the judgment to the circuit court within ten days of the entry of judgment.  RP § 8-402.1(b)(2).  "Upon application of either party, the court shall set a day for the hearing of the appeal not less than five nor more than 15 days after the application and notice of the order for the hearing shall be served on the other party or that party's counsel at least five days before the hearing." *Id.*

22

### 3. *Tenant Holding Over Action – RP § 8-402*

The final statute in the trilogy is the tenant holding over statute, RP § 8-402. Unlike the two statutes discussed above, the right of possession provided under the tenant holding over statute is *not* based upon an ongoing contractual relationship between the landlord and tenant and a tenant's breach. Rather, the statute provides a mechanism that enables a landlord to regain possession upon the *expiration of the lease* by virtue of his or her reversionary interest.

"At common law, tenancies for a term of years required no notice of termination and automatically expired at the end of the stated term." Douglas M. Bregman, *Maryland Landlord-Tenant Law: Practice and Procedure* § 9.05 (Matthew Bender 4th ed. 2010, 2020 Supp.). "A tenant remaining beyond the stated term became a tenant at sufferance and, depending upon the express or implied intent of the landlord, could become a tenant at will, a periodic tenant, or a tenant for an entirely new term co-extensive with the original term." *Id.* (footnote omitted).

For over a century, Maryland has had a tenant holding over statute on the books that enables a landlord to recover possession of his or her property from a tenant after the expiration of a lease. *See Benton v. Stokes*, 109 Md. 117 (1908). From its earliest enactment, continuing to the present, the landlord's right to regain possession of the landlord's property after the expiration of a lease has been conditioned only upon the

landlord providing the tenant with written notice to quit. *Compare* Section 1, art. 53 of the Code Pub. General Laws 1904 *with* RP § 8-402(b)(1)(ii)(2).[18]

The tenant holding over statute modifies the common law in two respects. First, with some exceptions not pertinent here, it establishes a periodic month-to-month tenancy for a holdover tenant who remains on the premises with the consent of the landlord after the expiration of a lease. RP § 8-402(d).[19] Second, it requires that a landlord provide 60 days' written notice of the landlord's intent to terminate a tenancy prior to taking action to regain possession. RP § 8-402(b)(1)(i).[20]

---

[18] Section 1, art. 53 of the Code of Public General Laws of 1904 provided as follows:

> In all cases where any interest in real estate shall be let or leased for any definite term or at will and the lessor[,] his heirs, executors, administrators or assigns shall desire to repossess the same after the expiration of the term for which it was demised and shall give notice in writing one month before the expiration of said term or determination, of said will, to the tenant or the person in actual possession to remove from the same at the end of said term, and if the said tenant or person in actual possession shall refuse to comply therewith the lessor, his heirs executors, administrators or assigns may make complaint thereof in writing to any justice of the peace of the county wherein such real estate is situate.

[19] The exceptions to the month-to-month holdover tenancy are where: (1) a written lease provides an alternative holdover tenancy period that is initialed by the tenant; or (2) the holdover tenant had been a week-to-week tenant, in which case the holdover tenant remains a week-to-week tenant. RP § 8-402(d).

[20] Prior to October 1, 2021, the statute only required that the landlord provide the tenant with one month's notice prior to filing a tenant holding over action. During the 2021 Legislative Session, the General Assembly expanded the notice provision to require that all tenants receive 60 days' notice to vacate prior to instituting a tenant holding over proceeding. 2021 Md. Laws, ch. 803. In the instant cases, Baltimore City's local laws require that the landlord provide the tenant with 60 days' notice prior to a landlord filing a tenant holding over action. *See* Public Local Laws of Baltimore City ("PLL") § 9-14. Accordingly, although RP § 8-402 only required 30 days' notice at the time that Copycat

24

After the statutory notice requirements have been satisfied, if the tenant refuses to vacate the property, the landlord may file a tenant holding over complaint in the District Court to regain possession of the property. Once the complaint is filed, the court "shall issue" a summons ordering the "constable or sheriff to notify the tenant, assignee, or subtenant to appear on a day stated in the summons before the court to show cause why restitution should not be made to the landlord." RP § 8-402(b)(ii)(1).

Upon filing of the complaint and notice provided by the statute, the court "shall thereupon give judgment for the restitution of the possession of said premises" to the landlord upon finding that: (1) "the landlord had been in possession of the leased property[;]" (2) the "tenancy is fully ended and expired[;]" (3) "due notice to quit . . . [has] been given to the tenant or person in possession[;]" and (4) "that the tenant or person in possession [has] refused to do so[.]" RP § 8-402(b)(2)(i).

Although tenant holding over actions are purely possessory in nature, the landlord may request a judgment for actual damages against the tenant or the person in actual possession that are caused by the hold over. RP § 8-402(a). Only actual damages may be claimed, which may include the rent under the lease apportioned for the period of the holdover. *Id.*

If the court enters judgment in favor of the landlord, the tenant has 10 days to file a notice of appeal in the circuit court. RP § 8-402(b)(2)(ii). The "appellate court shall, upon the application of either party, set a day of the appeal, not less than 5 nor more than 15

---

gave the Appellants notice, Copycat provided the Appellants with 60 days' notice as required by the Baltimore City Public Local Laws.

25

days" after the application for appeal, and the order setting the hearing shall be served on the opposing party or that party's counsel at least 5 days before the hearing. RP § 8-402(b)(2)(iv).

Unlike the breach of lease action—in which the Legislature expressly mandates that the court weigh equitable factors and alternative remedies before declaring a forfeiture of an existing lease, thereby entitling a landlord to possession—in a tenant holding over action, the court has no such authority to undertake an equitable analysis before awarding possession to the landlord. *See Brown*, 350 Md. at 580 (noting that "there is no caveat in § 8-402 comparable to that in § 8-402.1"). Instead, the tenant holding over statute mandates that the court enter a judgment of restitution for the landlord provided that the "landlord [has] prove[n] the four requisite elements—prior possession, a lease that has expired, proper notice to quit, and the tenant's refusal to vacate[.]" *Id.*

In this case, we are being asked to balance the landlord's right to repossess the landlord's property after the expiration of the tenancy with the tenant's right to safe and habitable living conditions during the term of the tenancy. Just as the Legislature has seen fit to alter the common law by providing statutory remedies to property owners for the repossession of property, it has also altered the common law to provide statutory remedies to residential tenants throughout the duration of their tenancy to address unsanitary or dangerous living conditions. It is useful to outline the various remedies available to the tenant.

## C. Residential Tenant's Statutory Remedies

### 1. Rent Escrow – RP § 8-211

At common law, a tenant's covenant to pay rent was independent of other covenants in the lease, absent an express agreement to the contrary. Bregman, *supra* at § 3.03[4][c]. Accordingly, a tenant was not entitled to withhold rent for a landlord's breach of a covenant in the lease, such as the existence of a dangerous condition. *Id.* The General Assembly altered the common law through the enactment of the rent escrow statute, RP § 8-211, which declared a "public policy of Maryland that meaningful sanctions be imposed upon those who allow dangerous conditions and defects to exist in leased premises[.]" The statute establishes "an obligation upon landlords to repair and eliminate conditions and defects which constitute, or if not promptly corrected will constitute, a fire hazard or a serious and substantial threat to the life, health or safety of occupants[.]" RP § 8-211(e). The statute provides a non-exhaustive list of examples of conditions for which a tenant may seek relief under the statute, including:

> (1) Lack of heat, light, electricity, or hot or cold running water, except where the tenant is responsible for the payment of the utilities and the lack thereof is the result of the tenant's failure to pay the charges;
>
> (2) Lack of adequate sewage disposal facilities;
>
> (3) Infestation of rodents in two or more dwelling units;
>
> (4) The existence of any structural defect which presents a serious and substantial threat to the physical safety of the occupants; or
>
> (5) The existence of any condition which presents a health or fire hazard to the dwelling unit.

RP § 8-211(e)(1)–(5).

27

The rent escrow statute creates both an affirmative cause of action for a tenant, as well as a defense to certain actions brought by a landlord. If the tenant notifies the landlord of serious conditions or defects, and "[i]f the landlord refuses to make the repairs or correct the conditions, or if after a reasonable time the landlord has failed to do so, the tenant may bring an action of rent escrow to pay rent into court because of the asserted defects or conditions[.]" RP § 8-211(i). The tenant also "may refuse to pay rent and raise the existence of the asserted defects or conditions as an affirmative defense" to an action brought by the landlord "to recover rent or the possession of the leased premises." *Id.* As a condition to obtaining relief under the statute, the tenant must notify the landlord of the defect and may be required to pay the rent to the court. RP §§ 8-211(g) and (k).

In addition to any other relief available to the tenant (such as an abatement of rent), if, "within 90 days after the court finds that the conditions complained of by the tenant exist[,] the landlord has not made the repairs or corrected the conditions complained of, the tenant may file a petition for an injunction in the District Court requesting that the court "order the landlord to make the repairs or correct the conditions." RP § 8-211(j). In adjudicating issues under the rent escrow statute, the trial court is required to make "appropriate findings of fact" and order relief either for the landlord—*e.g.*, termination of the lease and restitution of the premises or dismissal of the rent escrow action—or the tenant—*e.g.*, abatement of the rent and an order that the landlord make necessary repairs. RP § 8-211(m). A public local law

or ordinance "comparable in subject matter" to the rent escrow state "shall supersede" the State statute. RP § 8-211(o).[21]

> 2.  *Affirmative Claim or Defense Under Anti-Retaliation Statute –*
>     *RP § 8-208.1(b)*

State law protects a residential tenant from retaliation by a landlord for certain activities. RP § 8-208.1(a). Included among the prohibited acts, a landlord may not "bring or threaten to bring an action for possession against a tenant[,]" because the tenant or the tenant's agent: (1) makes a good faith complaint to the landlord, or to any public agency about the landlord, regarding an alleged violation of the lease, a violation of the law, condition on the leased premises that is a substantial threat to the health or safety of occupants; (2) has filed a lawsuit against the landlord, or testified or participated in a lawsuit involving the landlord; or (3) has participated in any tenants' organization. RP § 8-208.1(a)(2). Where a landlord engages in action that is prohibited by the statute, it is considered to be a "retaliatory action[.]" RP § 8-208.1(b). The tenant may raise a retaliatory action of a landlord in "defense to an action for possession" or as "an affirmative claim for damages resulting from a retaliatory action of a landlord occurring during a tenancy." *Id.*

---

[21] As we observed in *Pettiford v. Next Generation Trust Service*, 467 Md. 624, 660–61 (2020), "Baltimore City's rent escrow law[] mirrors RP § 8-211" and provides that a tenant can raise the issues relating to housing conditions outlined in that public local law "as a defense in answer to an action of distress for rent or in any complaint proceeding brought by a landlord to recover rent or the possession of leased premises for nonpayment of rent[.]" (quoting PLL §9-9(c)(2)).

If the court finds that the landlord committed a retaliatory action, the court may award the tenant damages against the landlord in an amount not to exceed the equivalent of three months' rent, reasonable attorneys' fees, and court costs. RP § 8-208.1(c)(1).[22] To obtain relief under the statute, the tenant must be current on the rent due and owing at the time of the alleged retaliatory action, unless the tenant is withholding rent pursuant to the rent escrow statute, RP § 8-211, or a comparable local ordinance. RP § 8-208.1(d). The statute also expressly provides that, "[a]s long as a landlord's termination of a tenancy is not the result of a retaliatory action, nothing in this section may be interpreted to alter the landlord's or tenant's rights to terminate or not renew a tenancy." RP § 8-208.1(f).

### 3. Tenant's Protections Under Consumer Protection Laws

In addition to the protections afforded to tenants under Title 8 of the Real Property Article, the Maryland Consumer Protection Act ("MCPA") provides residential tenants protection in the form of public enforcement, as well as private remedies against landlords who engage in unfair, abusive, or deceptive trade practices. *See* Maryland Code (1974, 2013 Repl. Vol., 2021 Supp.), Commercial Law Article ("CL") § 13-101, *et. seq.*[23]

---

[22] Similarly, if the court finds that the tenant's assertion of retaliatory action was made "in bad faith or without justification," the court may enter a judgment against the tenant in favor of the landlord. RP § 8-208.1(c)(2).

[23] Under the Maryland Consumer Protection Act ("MCPA"), "consumer realty" is defined as real property that is "primarily for personal, household, family or agricultural purposes." CL § 13-101(d). "Consumer" is defined as an "actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit." CL § 13-101(c)(1). Under these definitions, residential tenants who lease real property qualify for protection under the MCPA. *See Golt v. Phillips*, 308 Md. 1, 8 (1986).

In the rental housing context, our jurisprudence firmly establishes the right of a tenant to bring a private cause of action under the MCPA where a landlord violates a local rental license law, and where the tenant can prove that the tenant suffered actual injury or loss in connection with the unlicensed status of the property. In *Golt v. Phillips*, 308 Md. 1 (1986), we held that where the landlord had engaged in unfair and deceptive trade practices in the rental of consumer realty (by renting an unlicensed apartment with housing code violations), the tenant could recover compensatory damages consisting of three months' rent that he had paid for an uninhabitable apartment, as well as consequential damages, such as moving expenses and costs associated with substitute housing for the remainder of the term of the original lease. 308 Md. at 13–14.

In *Citaramanis v. Hallowell*, 328 Md. 142 (1992), the tenants brought a similar private action under the MCPA against the landlord for renting them an unlicensed apartment. However, unlike the tenant in *Golt*—who had established that the property was not only unlicensed, but uninhabitable—the tenants in *Citaramanis* did not allege that the property was unclean, unsafe, uninhabitable, or unsuitable in any regard. *Id.* at 149. To the contrary, the tenants' counsel explicitly argued that the condition of the property was irrelevant because the basis of their cause of action was misrepresentation regarding the failure to license, not the condition of the property. *Id.* In fact, the evidence reflected that, at the conclusion of the term of the lease, the tenants elected to extend their tenancy and remain on the premises for another six months after the termination of the original lease at a higher rent. *Id.*

31

We granted *certiorari* to determine whether a tenant who brings a private action under the MCPA may be awarded restitution of rent paid for an unlicensed dwelling upon proving lack of licensure alone. *Id.* at 147. We held that in order to prevail on a private MCPA claim, a plaintiff must prove "actual injury or loss." *Id.* at 151 (quoting CL§ 13-408(a) and *Golt*, 308 Md. at 12). We explained the rationale for the requirement that a plaintiff prove "actual injury or loss," observing that where the plaintiff does not suffer an injury or loss, they may avail themselves of the MCPA's public enforcement remedies. *Id.* at 151–52. We noted that the MCPA's "public enforcement mechanisms are set up to prevent potentially unfair or deceptive trade practices from occurring, even before any consumer is injured, whereas § 13-408(a) requires that actual 'injury or loss' be sustained by a consumer before recovery of damages is permitted in a private cause of action." *Id.* at 153. We stated that "awarding full restitution of the rent paid by the tenants who offered no proof of actual injury or loss would be in the nature of a punitive remedy," serving to penalize the landlords for their failure to obtain a license and to serve as a general deterrent to similar conduct by other landlords generally. *Id.* We explained that CL § 13-408(a) "was not intended to punish the landlord or set an example for similar wrongdoers." *Id.* Accordingly, we held that the plaintiff tenants could only recover on their private MCPA claim against their landlord for deceptive trade practices arising from renting an unlicensed apartment if they could prove that the unlicensed condition caused them to suffer an "actual injury or loss." *Id.* We remanded the case to the trial court for further proceedings "to determine whether the tenants are

able to prove that they suffered 'actual injury or loss,' justifying recovery" under CL § 13-408(a). *Id.* at 153–54.

In summary, as part of the comprehensive codification of the laws governing landlord and tenant relations, the Legislature provides statutory remedies to tenants that are intended to ensure that they are protected from unsafe or uninhabitable living conditions for the duration of their tenancy. These remedies include the rights and protections granted under:

• the rent escrow statute (RP § 8-211), which provides the tenant with the right to withhold rent where dangerous and serious defects exist, until conditions are corrected, as well as the right to seek injunctive relief;

• the anti-retaliation statute (RP § 8-208.1), which protects tenants from retaliatory conduct by landlords, including actions taken against a tenant for complaining about living conditions to a public agency; and

• the MCPA (CL § 13-101, *et seq*), which provides for public enforcement actions, as well as allows the tenants to seek damages arising from a landlord's conduct in renting an unlicensed premises where such unlawful conduct causes actual injury or loss.

These statutes also allow a prevailing tenant to recover reasonable attorney's fees. In addition to these statutory remedies under State law, the Baltimore City Public Local Laws ("PLL") also provide tenants with additional protections with respect to housing

conditions for the duration of a tenancy, such as an implied warranty of habitability.[24]  As our case law illustrates, a tenant may assert these statutory and local law protections as defenses to a landlord's action or as an independent affirmative claim against the landlord.  *See, e.g.*, *Pettiford v. Next Generation Trust Service*, 467 Md. 624 (2020) (holding that a tenant was entitled to assert and litigate the defense of implied warranty of habitability provided under the Baltimore City Public Local Laws as well as the rent escrow statute during a summary ejectment proceeding and to have those defenses fully considered); *Cane v. EZ Rentals*, 450 Md. 597 (2016) (holding that a tenant can assert rights under the rent escrow statute as a defense to a landlord's summary ejectment proceeding); *Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397 (2016) (discussing a tenant's right to file a counterclaim under the anti-retaliation statute in response to a landlord's filing of a tenant holding over action).

---

[24] PLL § 9-14.1, concerning the implied warranty of fitness, also known as the implied warranty of habitability, provides that, "[i]n any written or oral lease or agreement for rental of a dwelling intended for human habitation, the landlord shall be deemed to covenant and warrant that the dwelling is fit for human habitation."  PLL § 9-14.1(a).  PLL § 9-14.1(b)(3) defines "fit for human habitation" as meaning that "the premises shall not have any conditions which endanger the life, health[,] and safety of the tenants, including, but not limited to vermin or rodent infestation, lack of sanitation, lack of heat, lack of running water, or lack of electricity."  PLL § 9-14.2 provides that the "warranty of habitability" provided in PLL § 9-14.1 "is a continuing warranty, and the tenant may maintain an action for breach of this warranty, *at any time during the tenancy*, if the dwelling becomes unfit for human habitation.  An action for breach of warranty may also be maintained as a defense in an action for summary ejectment or distress of rent." (Emphasis added).

**D.** ***Whether We Should Judicially Foreclose a Property Owner's Right to File a Statutory Holding Over Action if the Property Owner Lacks a Valid Rental License***

Against the backdrop of these statutory remedies available to both landlords and tenants, we consider Appellants' contention that we should apply the principles articulated in *McDaniel v. Baranowski* to tenant holding over actions and hold that the statutory remedy is unavailable to an unlicensed landlord seeking the return of the landlord's possessory interest in real property after the expiration of the tenancy. In support of their position, Appellants rely upon our holding in *McDaniel*, as well as a line of Maryland cases dealing with the Court's unwillingness to assist with the enforcement of monetary claims made by unlicensed professionals for services rendered under a contract for which a license was required to protect the public. *See, e.g.*, *Berenter*, 258 Md. 290; *Snodgrass*, 232 Md. 416; *Goldsmith*, 132 Md. 283. Given that these cases are based upon notions of public policy, it is useful to first give an overview of the principles underlying our holding in these cases.

"From the dawn of the common law tradition in England, courts have refused to implement those private contractual undertakings which, when measured against the prevailing mores and moods of society, contravene judicial perceptions of so-called 'public policy.'" *Maryland-National Capital Park & Planning Comm'n v. Washington National Arena*, 282 Md. 588, 605 (1978) (citations omitted). "Public Policy is that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public, or against the public good, which may be termed, as it sometimes has been, the policy of the law, or public policy in relation to the administration of the law." *Id.*

35

(citing *Egerton v. Earl Brownlow*, 4 H.L. Cas. 1, 196 (1853)). One such application of this principle occurs where a party seeks to enforce an agreement where its performance is dependent upon the enforcing party securing a license. Restatement (Second) of Contracts ("Restatement") § 181, cmt. a (1981). The general rule has been articulated as follows:

> If a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his doing that act or of his promise to do it is unenforceable on grounds of public policy if
>
> > (a) the requirement has a regulatory purpose, and
>
> > (b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement.

Restatement § 181. We have applied this rule in cases by prohibiting an individual from enforcing a contract seeking money damages against another party to the contract, where a license was required for the performance of the contract and where we have determined that the license was necessary for the protection of the public.

In *Goldsmith*, an unlicensed insurance broker filed suit against a company to recover compensation, in the form of commissions, for services that the broker had performed which required a broker's license. 132 Md. at 284. This Court held that the unlicensed brokers could not recover compensation for their unlicensed services. The Court explained that "[i]t is settled that, where the contract which the plaintiff seeks to enforce is expressly, or by implication, forbidden by the statute, no court will lend its assistance to give it effect." *Id.* at 286. The Court explained that where the statute is enacted "not for revenue alone, but to protect the public," the Court will not permit the contract's enforcement. *Id.* at 288.

In *Snodgrass* we refused to permit an unlicensed architect to recover fees as a third-party beneficiary to a contract, where the underlying services performed by the architect required a license. 232 Md. at 416. Citing *Goldsmith*, we observed that the statute in question that required professional licensure was enacted for the protection of the public and not as a revenue measure. *Id.* at 422. Accordingly, we determined that "under the rule of the *Goldsmith* case, a contract prohibited by statute would not be enforceable by the unlicensed party[]" and therefore, the unlicensed architect was barred from recovery for his professional services. *Id.*

In *Berenter*, we held that a building contractor could not enforce a mechanic's lien upon a property for $12,976.54 plus interest, where the contractor was not licensed under the Maryland Home Improvement Law and where the property owners were dissatisfied with the work and embroiled in a payment dispute. 258 Md. at 292. Citing to *Snodgrass* and *Goldsmith*, we noted that

> [w]e and our predecessors have held that if a statute requiring a license for conducting a trade, business or profession is regulatory in nature for the protection of the public, rather than merely to raise revenue, an unlicensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy.

*Id*. at 293.

We applied these principles in *McDaniel* where an unlicensed landlord was attempting to enforce a tenant's covenant to pay rent under the summary ejectment statute. 419 Md. 560. Given Appellants' reliance on this case, it is useful to discuss this case in

37

some detail, particularly given the factual and procedural differences between *McDaniel* and the instant cases.

In *McDaniel*, the landlord and tenant entered into a written lease for an apartment rental in Anne Arundel County in March 2009. Unbeknownst to the tenant, the landlord did not have a rental license as required by the Anne Arundel County Code. Prior to moving into the apartment, the tenant paid the landlord the first month's rent in the amount of $650.00, as well as a security deposit of $650.00. *Id.* at 565. Immediately upon taking possession, the tenant discovered various problems with the apartment, including an electrical problem with the fuse box, which caused it to sizzle and spark and resulted in the power shutting off "quite a few times" per day. *Id.* According to the tenant, other aspects of the apartment were in disrepair, including two windows that had fallen out of the frames, hitting the tenant and her young daughter on the head on separate occasions. *Id*. at 566. In addition, the kitchen windows were missing locks, and the kitchen countertop was loose, unglued to the cabinet on which it sat. *Id.*

The tenant contacted the county health department about the condition of the property, which resulted in a county inspection of the premises. The inspector issued a letter to the landlord in April 2009—within one month of the tenant moving in—notifying the landlord of numerous code violations involving the poor condition of the windows, kitchen countertop, and electrical system. *Id.* Throughout all of this, the tenant did not pay rent, other than her initial payment of $1,300.00, which represented the first month's rent and the security deposit. *Id.* at 567. The tenant vacated the property on June 1—less than three months after she signed the lease agreement. *Id.*

38

Four days after the tenant's rent was due for April, the landlord filed a summary ejectment action under RP § 8-401 for failure to pay rent. The tenant was present when the case was heard on April 23. The District Court awarded possession to the landlord and entered judgment in the amount of $707.50 in rent and late fees. *Id.*

The tenant was scheduled to be evicted on May 15, 2009 but was granted an extension to remain on the premises until May 19. *Id.* That day, after securing counsel, the tenant filed an "Emergency Motion to Stay Eviction and to Revise Judgment, and Request for Rent Escrow," in which she alleged that the District Court had erroneously entered judgment "by consent." *Id.* In her motion, the tenant alleged that she "had asserted at the hearing that the premises contained serious and substantial defects and also had requested the remedy of rent escrow." *Id.* (internal quotations and footnote omitted).

In the meantime, prior to the tenant's filing of the emergency motion, the landlord had filed a second complaint for repossession under RP § 8-401 for failure to pay rent on May 12. *Id.* at 568. In response, the tenant, through counsel, filed a "Notice of Intention to Defend and Counterclaim," in which she alleged that the lease was void or voidable as against public policy, because the landlord had failed to obtain a license for the premises. The tenant's counterclaim also pleaded counts alleging a breach of implied warranty of habitability, violations of the MCPA, and a request for rent escrow. *Id.* at 568–70. The tenant requested that the District Court dismiss the landlord's complaint filed under the summary ejectment statute and sought $1,300.00 in damages (the amount of her first month's rent and security deposit). *Id.* at 571. She also requested that the court abate her rent until the landlord made repairs to the premises. *Id.* Contemporaneously, the landlord

39

filed a motion requesting that the court consolidate his April and May complaints, which was granted.

At the hearing, the court denied the tenant's motion to revise the April judgment, denied her counterclaims, and entered judgment in favor of the landlord for possession of the property, as well as for the May rent and late fees, determining that the landlord's failure to obtain a license did not preclude his summary ejectment action and that the tenant had failed to prove actual injury under the MCPA. *Id.* After the circuit court affirmed the District Court judgment, we granted the tenant's petition for writ of *certiorari* to determine whether a landlord, who does not possess a rental license mandated by the county code, may nevertheless initiate summary ejectment proceedings based upon a tenant's failure to pay rent. *Id.* at 574.

We started our discussion by noting that "[t]he legal relationship between landlord and tenant is governed by the contract between the parties," as well as the statutory provisions related to landlords and tenants found in Title 8 of the Real Property Article. *Id.* We described the steps outlined in the summary ejectment statute, RP § 8-401, that enable a landlord to regain possession upon a tenant's failure to pay rent, noting the swiftness of the process. We observed that, although the summary ejectment process did not require compliance with a county's license laws, we focused on the contractual nature of the parties' relationship, pointing out that the statute governing written residential leases—RP § 8-208—prohibited leases from containing certain provisions, including a tenant's waiver of any right or remedy provided by applicable law and expressly recognized the enforceability of local habitability ordinances. *Id.* at 579–80.

40

We analogized an unlicensed landlord's attempt to enforce his contract rights through the summary ejectment process to the unlicensed contractor in *Berenter* who was attempting to enforce his contractual right to payment through the mechanic's lien process. *Id.* at 583. Citing *Berenter*, we observed that "if a statute require[s] a license for conducting a trade or business which is 'regulatory in nature for the protection of the public, rather than merely to raise revenue,' a person who has neglected to obtain a license 'will not be given the assistance of the courts' in enforcing the contract." *Id.* "In other words," we explained, "once we determined that the purpose of the statute was to eliminate a perceived harm, rather than to build the public fisc, then we recognized that an unlicensed person should not be afforded the benefit of swift justice, or the establishment of a mechanic's lien, which requires but a filing in court for its creation." *Id.*

We also noted that a summary ejectment proceeding under RP § 8-401 is "substantively and procedurally limited," thereby precluding the litigation of complex issues. *Id.* at 585. We concluded by recognizing that

> [t]he summary ejectment procedure itself is mired in the superior title of the landlord to the leased premises, once nonpayment occurs, because it only requires that the landlord describe 'the property to be repossessed,' 'the name of each tenant,' and 'the amount of rent and any late fees due and unpaid,' in making the landlord's prima facie case warranting summary ejectment. Licensure under local ordinances in order to operate rental dwelling units is an integral part of a landlord's status as claimant in those jurisdictions that require licensure.

*Id.* at 586–87. We held that, "in order to invoke the facile process of summary ejectment, a landlord in those jurisdictions requiring licensure, must affirmatively plead and

41

demonstrate that he is licensed at the time of the filing of the complaint for summary ejectment in order to initiate the summary ejectment process." *Id*. at 587.

In summary, our holding in *McDaniel* was based upon two controlling factors: (1) the public policy principle that courts will not permit an unlicensed contractor to enforce a contract the performance of which is dependent upon a license issued for the protection of the public; and (2) the swift nature of the summary ejectment proceeding, which would entitle an unlicensed claimant to the contractual relief in the form of money damages and possession of property arising from a tenant's alleged breach of contract.

Appellants urge us to apply the policies underlying *McDaniel* and the cases cited therein, to preclude the statutory remedy set forth in the tenant holding over statute, where a landlord is seeking a writ of possession of his or her property after the expiration of the tenancy and does not have current rental license. For the reasons set forth below, we are not persuaded to judicially foreclose a property owner's statutory right to repossess his or her property afforded by the General Assembly under RP § 8-402 under these circumstances.

*First*, *McDaniel*, *Berenter*, *Snodgrass*, and *Goldsmith* all involved the application of the general rule, based upon principles of public policy, that the courts will not permit an unlicensed party to enforce a contract where the services for which compensation is sought are dependent upon a license that is regulatory in nature. As discussed, the summary ejectment process at issue in *McDaniel* is based upon a contract between the parties—in the form of a lease—and involves a landlord's efforts to utilize the courts to enforce the tenant's covenant to pay rent. The landlord's remedies flow from a contract that is only

42

capable of being performed with a rental license. The remedies—damages in the form of unpaid rent and a judgment of possession—are based upon the tenant's breach of the parties' lease—specifically, a tenant's covenant to pay rent. RP § 8-401(e).

Here, Copycat is not seeking to enforce a contract. Under the tenant holding over statute, the landlord's right to gain repossession is not based in contract, nor is the remedy the result of any breach. In fact, the tenant holding over action is *only available* if there is *no longer a contract in effect*. To award possession to the property owner, the court must make a factual determination that the "tenancy is fully ended and expired[.]" RP § 8-402(b)(2). In other words, the statutory remedy does not arise from any contractual breach—it arises from the property owner's possessory interest in the property.

*Second*, *McDaniel* and the line of cases cited therein, all involve an unlicensed party's attempt to pursue monetary claims—in the form of rent, unpaid commissions, and payments for services—where a license was required to perform the contract. In this case, Copycat did not seek, nor did it receive, a judgment for money damages in the form of unpaid rent or otherwise. Copycat is seeking the return of its possessory interest in real property. As we previously noted, property law is derived from three sources: the common law, statutes, and the Constitution. *See supra*, Johnson at 248. Balancing a property owner's right to repossess the owner's possessory interest after the expiration of a tenancy against a government's interest in maintaining a rental license program for the protection of the public might, in certain circumstances, trigger a constitutional analysis.[25] We do not

_____

[25] In the *amicus curiae* brief of the Maryland Multi-Housing Association, Inc. (the "Association"), filed in support of Copycat, the Association asserts that "[w]hen a statute

43

need to undertake such an inquiry here—it is sufficient for our purposes to simply note that there are significant property interests at stake when a property owner is seeking a return of a reversionary interest—rights that are not implicated in a case involving contract claims for money damages.

*Third*, as discussed in part III B. above, the statutory elements and procedure under the failure to pay rent statute, RP § 8-401—the statute at issue in *McDaniel*—are very different from those outlined in the tenant holding over statute, RP § 8-402. The summary ejectment process permits a landlord to terminate an ongoing tenant relationship based upon a tenant's breach. At the time that *McDaniel* was decided, under the failure to pay rent statute, the landlord had the right to file a complaint to repossess the property as soon as the tenant failed to pay rent when due and payable and was not required to provide any notice to the tenant prior to filing the complaint.[26] The appeal period after the entry of a judgment is four days. RP § 8-401(f).

---

enacted under the police power of the State, purporting to regulate private property, has the effect of taking private property completely from an individual for a public purpose, the doctrine of eminent domain is invoked, and the State must provide just compensation for the taking." The Association contends that extending the holding in *McDaniel* to tenant holding over actions brought pursuant to RP § 8-402 would result in the absence of a legal avenue for a property owner to exercise his or her reversionary interest in real property and would be tantamount to a taking of private property without compensation. The Association claims that, under our precedent set forth in *Muskin v. State Dept. of Assessments and Taxation*, 422 Md. 544 (2011), such a holding would interfere with a vested private property right in violation of the Maryland Constitution. Given our decision not to foreclose this statutory remedy as suggested by the Appellants, we do not need to address whether constitutional rights would be implicated by such a holding.

[26] During the 2021 Legislative Session, the General Assembly amended the failure to pay rent statute to require that the landlord provide written notice to the tenant. 2021 Md.

44

By contrast, a tenant holding over action may not be filed unless and until the landlord and tenant relationship has concluded. Before a tenant holding over action can be filed, the landlord is required to give 60 days' notice of an intent to terminate a month-to-month tenancy. If the tenant believes that the landlord's termination is based upon retaliatory conduct prohibited by RP § 8-208.1, the tenant has time to raise these issues as an independent claim, or as a defense to a property owner's holding over action. *See e.g.*, *Lockett*, 446 Md. 397.

*Fourth*, as conceded by Appellants during oral arguments in these cases, in the event that this Court were to decide to extend the *McDaniel* reasoning to tenant holding over actions, a landlord who is not in possession of a current rental license would be left with no statutory remedy by which to seek repossession of his or her property after the expiration of a tenancy.[27] Appellants also conceded that there may be legitimate reasons for a property owner to decide that he or she does not want to renew a rental license solely for the purpose of regaining possession of his or her property after the expiration of a lease. Perhaps in recognition that a holding that forecloses *any* ability of an unlicensed landlord to seek the

---

Laws, ch. 746. The statute also gives the tenant 10 days' notice to cure before the landlord may file a complaint. *Id.* These new tenant protections are set forth in RP § 8-401(c).

[27] Where a tenant continues to possess property after the expiration of a lease or as a month-to-month tenant, a property owner would not be permitted to use the "wrongful detainer" statute to obtain possession. RP § 14-132. That statute only applies where a person is holding "possession of real property without the right of possession." RP § 14-132(a). A tenant holding over is entitled to possession until a court enters an order terminating that right. The right to terminate a tenancy under such circumstances is established by the tenant holding over statute, RP § 8-402. Under the provisions of the wrongful detainer statute, the statute does not apply if a remedy is available under Title 8 of the Real Property Article—the title governing landlord-tenant relationships.

45

return of its reversionary interest would implicate basic fairness concerns (in addition to potential constitutional takings assertions), counsel for Appellants suggested at oral argument that we fashion a judicial holding to require that an unlicensed landlord file a common law ejectment action and prove that there are "exceptional circumstances" justifying the return of the property.

As we noted above, we have not found any Maryland cases or cases in other jurisdictions in which a property owner filed a common law ejectment action in the context of a residential tenancy to regain possession after the expiration of a lease. The lack of case law relates to the fact that the common law action of ejectment has undergone a "statutory modification . . . in every state as a method of testing the right to land." Baxter Dunaway, 4 *Law of Distressed Real Estate* § 48:34 (2021). As observed in treatises on the subject, "[t]here is little written on the remedy of ejectment. This is probably due to the fact that it is seldom used today. It is obviously not adapted to meet the needs of lessors desiring to oust a lessee whose term has expired[.]" *Id.* at § 48:37.

Having come full circle, we return to our discussion of the common law. Common law ejectment "is an action at law that tests the right to the possession of real property as against one who presently possesses it wrongfully. In other words, ejectment is an action filed by a plaintiff who does not possess the land but has the right to possess it against a defendant who has actual possession." 25 Am. Jur. 2d. *Ejectment* § 1 (2021); *see also* 9 *Maryland Law Encyclopedia*, Ejectment § 1 (2021). As discussed *supra*, at common law, an ejectment action simply requires that the plaintiff establish that he or she is entitled to possession and that someone other than the plaintiff is in possession the property without

46

permission. Historically, it was an action at law. *See* John McHenry, *The Ejectment Law of Maryland*, 53 (1822). There is no notice requirement, and the common law is not concerned with the landlord's subjective intent or reasons for terminating the tenancy. Nor does a court weigh "equitable factors" or consider "exceptional circumstances" in a common law ejectment action to determine whether a property owner should be entitled to a return of his or her possessory interest when a tenancy has expired.

Appellants' suggestion that we require that an unlicensed landlord utilize common law ejectment and prove that "exceptional circumstances" exist to justify the return of his or her property raises more questions than it answers. In many instances, the rental licensing process is time consuming and may involve considerable cost to the property owner. Prior to obtaining a rental license, the property must be inspected, any deficiencies must be corrected, and then the property must be reinspected. Like many other county and municipal jurisdictions in our State, the Baltimore City rental license and inspection program applies to any rental unit, including a single-family dwelling, that is not owner-occupied. A property might fail to satisfy the standards set forth under a property maintenance code or housing code for a host of reasons and with a considerable range of expense, depending upon the nature of the condition giving rise to the violation.

Requiring that a landlord comply with the inspection and licensing process to engage in rental activities is a legitimate exercise of governmental police powers to ensure that residential housing complies with public health and safety standards. However, requiring that a property owner comply with the inspection and rental process *to seek the return* of his or her property after the *expiration of a tenancy*, or prove that "exceptional circumstances"

47

exist to excuse such a requirement, is problematic. We can think of a myriad of reasons that a property owner might not renew a lease with a tenant, and where it would not be fair or equitable to require that the property owner undertake compliance with the housing codes and obtain a rental license simply to recover possession of the property. We will not attempt to list all of them here.[28] A property owner's subjective reasons for deciding not to renew a tenancy have never been part of the common law ejectment action. We see no reason to create a modified common law ejectment action containing such subjective elements, where the Legislature has enacted statutes that codify all aspects of landlord and tenant relationships, including modifications to common law ejectment, and has established an array of remedies available to the tenant to address housing conditions, which in our view, strike the correct balance between these rights. Moreover, we conclude that crafting the holding requested by the Appellants would unreasonably interfere with property rights.

### E.      When an Appeal of a Tenant Holding Over Action is De Novo as Opposed to On the Record

Finally, Velicky contends that the circuit court erred in conducting the appeal of this matter as a de novo hearing instead of on the record. Under CJ § 12-401(f), an appeal in a

---

[28] Although we will not identify every instance in which a property owner may not wish to undergo the rental license process simply to recover possession of his or her property, a few come to mind. For example, a property owner may want to sell the property to a third party free and clear of any tenancies. The tenant may have created the condition giving rise to the housing violation, and the landlord may not wish to renew a tenancy on that basis. A property owner may not have the financial means to correct a deficient condition that precludes the rental of the property and instead chooses to get out of the rental business. A property owner may want to undertake a major renovation to a structure or demolish it. A property owner may wish to use the property for a different purpose other than residential rental use. A property owner may wish to occupy the structure for his or her own personal use.

civil case from the District Court of Maryland shall be heard on the record if the amount in controversy exceeds $5,000.00 or if the parties consent. *See also* Md. Rule 7-102(b)(1). Here, as discussed above, Copycat is not seeking a money judgment; it is seeking repossession of its possessory interest. Our analysis in *Purvis v. Forrest Street Apartments*, 286 Md. 398 (1979), is instructive.

In *Purvis*, we were asked to determine whether an appeal to the circuit court of a landlord's claim for unpaid rent and repossession of the rented premises was to be tried de novo rather than on the District Court record. In that case, the landlord initiated a summary ejectment action in the District Court for possession of the premises. *Id.* at 400. The landlord also sought unpaid rent and late payment charges of $487.05. *Id.* The tenant claimed that she was entitled to rent credit of $395.00. After the District Court agreed with the tenant, holding that she was entitled to the rent credit, the landlord filed an appeal in the circuit court. In the circuit court, the tenant filed a motion to dismiss on the ground that the landlord failed to transmit the record from the District Court. *Id.* She maintained that the appeal was required to be conducted on the record rather than de novo. She asserted that "in determining the amount in controversy in a case such as this where the plaintiff landlord was seeking both a sum of money and possession of the premises, the value of the right of possession should be taken into consideration along with the amount of money claimed." *Id.* The landlord argued that the "court should look only to the amount of money claimed by the parties, and if neither side was claiming an amount in excess of $500.00,

49

the appeal should be de novo." *Id.* at 401.[29]  The circuit court agreed with the landlord and

after a de novo trial, rendered a judgment in favor of the landlord.  *Id.*

We granted *certiorari* to determine whether the appeal to the circuit court should

have been tried de novo rather than on the record under CJ § 12-401.  Examining the

plain language of the statute, we observed that "[u]nder the 'amount in controversy' test

for the monetary jurisdiction of an appellate court, under circumstances where the

plaintiff appeals from an adverse decision barring his entire claim, courts ordinarily look

to the demand in the pleading setting forth the plaintiff's claim, including any

amendments[.]"  *Id.* at 402.  "Applying these principles to the instant case," we

determined that "it seems clear that the value of the right to possession of the premises,

if it can be ascertained, should be considered along with the plaintiff's initial monetary

demand, in determining the nature of the appellate court's jurisdiction." *Id*. at 403.  We

examined the landlord's statement of claim filed in the District Court and noted that it

"contained two distinct demands, one for $487.05 and the other for possession of the

premises." *Id*.  Consequently, we held that

> both the $487.05 and the value of the right to possession must be considered
> . . . for purpose of deciding whether the appeal should have been on the record
> or de novo.  If the value of the right to possession clearly exceeded $12.95,
> then the amount in controversy exceeded $500.00 and the appeal should have
> been on the record.  In this event, under the circumstances of the case,
> dismissal of the appeal would have been the appropriate sanction for failure
> to have the record transmitted.

---

[29] When *Purvis* was decided, CJ § 12-401 established a monetary amount of $500.00
as the threshold for determining whether an appeal to the circuit court from a District Court
judgment was on the record or de novo.  *Purvis v. Forrest St. Apartments*, 286 Md. 398
(1979).  The monetary threshold is now $5,000.00.

*Id.* at 404. We determined that the value of the right to possession clearly exceeded $12.95. We observed that, for a landlord to terminate a month-to-month tenancy under the tenant holding over statute, a landlord would be required to give 30 days' written notice. Therefore, we concluded, that "the value of the delay in gaining possession of the premises . . . is equal to at least one month's rent." *Id.* at 405. We determined that, as the aggregate value of the landlord's claims, namely the $487.05 for unpaid rent and the $167.00, representing the minimum value to the landlord of the right to possession, was more than $500.00, the appeal should have been on the record and the circuit court should have granted the motion to dismiss for failure to have the record transmitted. *Id.*

Applying the analysis outlined in *Purvis*, although Copycat is not seeking a money judgment, it is seeking to repossess its property. Of course, the possessory interest has value. On the face of the District Court complaint, Copycat noted that the monthly "rental value of the premises is $2,750[.]" Although Velicky had a month-to-month tenancy, under the Baltimore City Public Local Laws, Copycat was required to give 60 days' notice to terminate the tenancy. Accordingly, "the delay in gaining possession of the property" was at least 60 days, or two months of rent. In this case, two months of rent exceeded the $5,000.00 threshold. Thus, the appeal should have been heard on the record. Because Velicky did not file a motion to dismiss the appeal, but rather, filed a "motion to set an on the record appeal," we shall remand the case to the circuit court for it to conduct an appeal on the record in this matter.

# IV

## Conclusion

In conclusion, we decline to foreclose an unlicensed landlord's right to seek repossession of the landlord's property at the expiration of a tenancy under the tenant holding over statute. We determine that there is no reason for this Court to judicially alter the balance between a property owner's right to repossess the owner's property after the expiration of a tenancy, and a tenant's right to safe and habitable living conditions during a residential tenancy. That balance has been struck by the Legislature through its enactment of a comprehensive statutory framework that governs landlord and tenant relationships, including its modifications to the common law ejectment action and the remedies afforded to tenants to ensure safe and habitable housing. Under these circumstances, we will not preclude the availability of a statutory remedy enabling a landlord to seek repossession of the landlord's property interest at the conclusion of the tenancy. We conclude that such a holding would unreasonably interfere with property rights.

With respect to Velicky's appeal, we hold that where the appeal from a District Court judgment involves only a claim for repossession of property with no money judgment, the value of the right to repossession must be considered in deciding whether the appeal should be on the record or de novo under CJ § 12-401(f). Because the circuit

52

court erred in conducting a de novo trial, we remand Velicky's case to the Circuit Court

for Baltimore City for that court to conduct an appeal on the record.

**IN CASE NO. 2, JUDGMENT OF THE CIRCUIT COURT AFFIRMED. COSTS IN THIS COURT TO BE PAID BY APPELLANT WALKE.**

**IN CASE NO. 1, CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT AND TO CONDUCT AN APPEAL ON THE RECORD CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE PAID EQUALLY BY THE PARTIES.**

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 1 & 2

September Term, 2021

ANNA VELICKY

v.

THE COPYCAT BUILDING LLC

CHRISTOPHER WALKE

v.

THE COPYCAT BUILDING LLC

Getty, C.J.,
McDonald
Watts
Hotten
Booth
Biran
Adkins, Sally D.
(Senior Judge, Specially
Assigned),

JJ.

Dissenting Opinion by McDonald, J.

Filed: November 29, 2021

The Majority Opinion is thoughtful and thorough, but I have come to a different conclusion. I agree with much of Judge Watts' analysis in her dissent, although I also believe that there remain, despite the Majority Opinion, significant economic and legal incentives for a landlord in Baltimore City to comply with the rental licensing requirement.

In these cases, a landlord that lacked the rental license required under the Baltimore City Code found itself in a dispute with some of its tenants about rent that they allegedly owed. The landlord's failure to comply with the licensing requirement prevented it from pursuing an expedited failure-to-pay-rent claim – also called "summary ejectment" – against those tenants in the District Court. Instead, the landlord resorted to another expedited statutory remedy – a tenant-holding-over action – and threatened to evict the tenants if the alleged back rent was not paid. The question before the Court is whether an unlicensed landlord may use an expedited tenant-holding-over action to recover possession of a rental property or, instead, may only pursue less-rapid remedies that may be available.

The Majority Opinion holds that the lack of a rental license does not preclude a landlord from invoking the tenant-holding-over remedy. The Majority Opinion perceives this as a just result that balances the property right of an unlicensed landlord against the interest of a tenant whose lease has expired.

In my view, the Court's case law makes clear that, in order to be eligible for the expedited statutory remedies available to landlords in the District Court – such as a tenant-holding-over action – a landlord must have a rental license required under local law if the license is intended to ensure the health and safety of rental housing. An offensive lineman on a football team, if he is lucky, might recover a fumble and carry it into the end zone to

score a touchdown. But he is ineligible to catch a forward pass – the expedited way to the end zone – under the rules of the game. Here, the Court has sanctioned the use of an expedited eviction remedy by one who, in my view, is ineligible – an unlicensed landlord.

*Common law ejectment and expedited statutory remedies*

As the Majority Opinion indicates, the common law action of ejectment developed over time in England as a means for a landlord to oust a tenant from the landlord's property. Majority slip op. at 14-16. That common law action, as modified by an English statute, became part of the law of Maryland under the State Constitution. Maryland Declaration of Rights, Article 5.

As the Court has previously explained, the General Assembly subsequently enacted a "trilogy of statutes providing landlords an expedited remedy for the recovery of leased premises." *Brown v. Housing Opportunities Comm'n*, 350 Md. 570, 576 (1998). Pertinent to this case, one of those expedited remedies is a tenant-holding-over action under Maryland Code, Real Property Article ("RP"), §8-402.[1] However, common law ejectment, which is not an expedited remedy, remains a part of the law of Maryland. *See Glorius v.*

---

[1] The other two members of the trilogy are a failure-to-pay-rent action – commonly known as "summary ejectment" – under RP §8-401 and a breach of lease action under RP §8-402.1.

Copycat argues that a tenant-holding-over action is not an expedited process because a landlord must provide advance notice terminating the tenant's lease and the action does not proceed on as rapid a timetable as an action for failure to pay rent under RP §8-401. The Majority Opinion makes a somewhat similar point. Majority slip op. at 44-45. However, as with a summary ejectment action, no pretrial discovery is permitted in a tenant-holding-over action. Maryland Rule 3-711. Copycat does not dispute that a tenant-holding-over action typically proceeds on a tighter timetable than a common law cause of action.

2

*Watkins*, 203 Md. 546, 549 (1954) ("Where the object of a proceeding is to obtain possession, the remedy is ejectment."); Allan W. Rhynhart, *Notes on the Law of Landlord and Tenant*, 20 Md. L. Rev. 1, 46 (1960) (upon giving notice of termination of a lease, landlord entitled to summary remedy against tenant *in addition to* ejectment).

*Regulation of landlord-tenant relationship through licensing*

A number of jurisdictions in Maryland have elected to regulate the landlord-tenant relationship by enacting a licensing requirement and making a license contingent on compliance with various health and safety related provisions. Baltimore City is one such jurisdiction.

In *McDaniel v. Baranowski*, 419 Md. 560 (2011), this Court held that a residential landlord's ability to invoke one of the expedited remedies for ousting a tenant – summary ejectment under RP §8-401 based on the tenant's failure to pay rent – was contingent on the landlord having the license required by the local jurisdiction when that license has a regulatory, rather than merely revenue-raising, purpose.[2] "[O]nce we determined that the purpose of the [licensing] statute was to eliminate a perceived harm, … we recognized that an unlicensed person should not be afforded the benefit of swift justice…." 419 Md. at 583. Thus, "in order to invoke the facile process of summary ejectment, a landlord in those

---

[2] In *McDaniel*, the rental unit was located in Anne Arundel County; a rental license was required under County law. As the Majority Opinion explains, the holding in *McDaniel* was largely an application of previous decisions of this Court that made compliance with a licensing requirement in various contexts a prerequisite to access to certain remedies. Majority slip op. at 35-42.

jurisdictions requiring licensure must affirmatively plead and demonstrate that he is licensed … in order to initiate the summary ejectment process." *Id*. at 587.

Like the Anne Arundel County Code, the Baltimore City Code requires that a person obtain a rental license as a prerequisite to offering to rent, or renting, a dwelling unit in the City. As a condition of that license, the rental property must pass an inspection to ensure that it complies with various health and safety standards. *See* Baltimore City Code, Article 13 (Housing and Urban Renewal), §5-1 *et seq*. An unlicensed landlord faces potentially significant penalties under the ordinance. *Id*., §5-17 (order requiring that premises be vacated), §5-25 (enforcement by citation), §5-26 (prosecution for misdemeanor carrying fine of up to $1,000 per day). In addition, consistent with the holding in *McDaniel*, this Court has held that a landlord in Baltimore City must have a rental license from the City to prosecute a failure-to-pay-rent action under RP §8-401. *Pettiford v. Next Generation Trust Serv*., 467 Md. 624 (2020).

*Application to this Case*

The question before us in this case is whether another of the trilogy of expedited remedies – a tenant-holding-over action – is also contingent on compliance with a rental licensing requirement.

In my view, the Court should give the same answer to an unlicensed landlord in this case with respect to a tenant-holding-over action as the Court did in *McDaniel* with respect

4

to a failure-to-pay-rent action. The Majority Opinion appears to reach a contrary conclusion for two primary reasons.[3]

First, it observes that an unlicensed landlord may simply want to recover possession of the leasehold for myriad reasons that have nothing to do with renting the property out – for example, sale of the property free and clear of the tenancies, departure from the rental business, renovation of the property for a different purpose, and so on. Majority slip op. at 45-48 & n. 28. Requiring the landlord to belatedly obtain a license that the landlord does not intend to use simply in order to file a tenant-holding-over action to recover the property, the Majority Opinion reasons, makes no sense. However, such a requirement makes sense if one views it as a matter of choice on the landlord's part. A landlord who failed to obtain a license – or, as in this case, failed to transfer the license prior to expiration when it elected to change its form of business organization from a sole proprietorship to a limited liability company – essentially made a choice that affected its legal relationship to its tenants and others. If it now wants to evict tenants for allegedly failing to pay their rent, it has a further choice either to use an expedited method by obtaining that license or, if it is content to proceed by a normal litigation timetable, to file a common law ejectment action.[4]

---

[3] The Majority Opinion also distinguishes *McDaniel* in that, unlike these cases, the unlicensed landlord in *McDaniel* asserted a monetary claim against the tenant. Majority slip op. at 43-44. However, the landlord in *McDaniel* did seek, and obtain, a judgment for possession of the rental unit under RP §8-401, and a motion to revise that judgment was the subject of the appeal. 419 Md. at 573-74. The Court's opinion did not turn on the fact that the landlord and tenant had also made monetary claims against each other.

[4] In its brief in this case, Copycat suggested that its tenants had stymied its effort to renew its rental license under its new form of business organization – that such a route was not open to it. However, there is no evidence to that effect in the record before us. It may

5

In these particular cases, there is no indication that Copycat wishes to do anything other than continue to rent out the units in its building. Moreover, the records in both of these consolidated cases contain a letter Copycat management emailed to the tenants. That correspondence makes clear that Copycat's purpose was to collect back rent and that it viewed the tenant-holding-over action as equivalent to a failure-to-pay-rent action.

Second, the Majority Opinion distinguishes the expedited tenant-holding-over action under RP §8-402 from the two other expedited actions – failure to pay rent (RP §8-401) and breach of lease (RP §8-402.1) – on the basis that the latter two actions are based on contract, while a tenant-holding-over action applies when a contract has expired. Majority slip op. at 18, 23, 42-43, 45. However, a tenant-holding-over action is rooted in the contractual relationship that existed and that continues to exist – at least in part – between the landlord and tenant. As illustrated in this case, the contract may continue to govern, or purport to govern, the relationship of the parties even after the stated term of the lease has expired. The form lease used by Copycat included a paragraph entitled "TENANT HOLDING OVER", which stated that "the tenant agrees that all of the obligations of the tenant and all rights of the landlord" would continue after the term of the lease if the tenant remained on the premises. The Majority Opinion appears to have overlooked that provision.

---

well be that an action in which discovery is available would have developed the record in that respect.

6

*Conclusion*

Copycat states that it is not seeking to collect back rent in these actions, that it plans to renovate the building and obtain a rental license, and that it simply wishes to vindicate its property rights. Copycat's representations as to its current intentions may be true, but the conclusion of the Majority Opinion will apply equally to an unlicensed landlord with no intention of abiding by the licensing requirement. While we may indulge the assumption that a particular person or entity acts with the best of intentions, the law does not. As Oliver Wendell Holmes, Jr., once said:

> If you want to know the law and nothing else, you must look at it as a bad man, who cares only for the material consequences which such knowledge enables him to predict, not as a good one, who finds his reasons for conduct, whether inside the law or outside of it, in the vaguer sanctions of conscience.
>
> \*   \*   \*   \*   \*
>
> [T]he bad man … does not care two straws for the axioms [of ethics] or deductions [from principles], but … he does want to know what the … courts are likely to do in fact.

Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv. L. Rev. 457, 459-61 (1897).

I would hold that Copycat and any other unlicensed residential landlord in Baltimore City, while unlicensed, may not invoke RP §8-402, and that its recourse, upon proper proof, must be to the common law action of ejectment.

Circuit Court for Baltimore City
Case No.: 24-C-20-004248

Circuit Court for Baltimore City
Case No.: 24-C-20-004247

Argued: September 14, 2021

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 1 & 2

September Term, 2021

———————————————————

ANNA VELICKY

v.

THE COPYCAT BUILDING LLC

———————————————————

CHRISTOPHER WALKE

v.

THE COPYCAT BUILDING LLC

———————————————————

Getty, C.J.
McDonald
Watts
Hotten
Booth
Biran
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

———————————————————

Dissenting Opinion by Watts, J.

———————————————————

Filed: November 29, 2021

Respectfully, I dissent. The cases before the Court are not about a landlord trying to get possession of apartments so that the landlord can sell an apartment building or use the building for a purpose other than residential leasing. Instead, the cases are about a landlord of a multi-tenant apartment building trying to obtain possession of two apartments, despite not having the license legally required to lease apartments and collect rent, so that the landlord can re-rent the apartments to new tenants and stay in the rental business. The Copycat Building LLC ("Copycat"), Respondent, has never obtained a license under Baltimore City Code, Art. 13, § 5-4(a), and as such, Copycat cannot legally rent apartments or collect rent. Yet, despite not having a license, Copycat has for years rented units in an apartment building and is now attempting to use tenant holding over actions under Md. Code Ann., Real. Prop. (1974, 2015 Repl. Vol.) ("RP") § 8-402 to get possession of the apartments occupied by Anna Velicky and Christopher Walke, Petitioners.

In these cases, the record demonstrates that Copycat will continue in the residential leasing business. In <u>Walke</u>, at a trial *de novo* in the circuit court, Copycat's counsel represented that Copycat requested a license, but the request was denied because of building code violations, and Copycat sought possession of Walke's apartment because it needed to remove tenants to abate the violations.[1] Almost immediately after making this

---

[1]Copycat has never offered a valid explanation for not obtaining a license. On brief in this Court, Copycat represents that the previous owner of the apartment building, Charles Lankford, had a license and that the 2018 transfer of the building from Lankford to Copycat (an LLC that he owns) caused the license to lapse. This version of events is recounted in the majority opinion. <u>See</u> Maj. Slip Op. at 3. But, this version of the events does not explain why Copycat, even at the time of oral argument in this case, continued to be an unlicensed landlord. The circumstance remains that Copycat, since becoming the owner

assertion, Copycat's counsel indicated that Copycat should be able to rent the apartment to somebody else for a monthly fee and get the license, then Copycat would be entitled to collect rent. Walke's counsel responded that Copycat's counsel's statement was a concession that Copycat's motive was to evict a nonpaying tenant and replace the tenant with one who was unaware that Copycat was not licensed and that Copycat suggesting that it was "going to empty out an entire building to make repairs" was "a pretty remarkable statement to make." Copycat's counsel immediately denied having made the statement. Regardless of the dispute between the attorneys over whether Copycat intended to empty the entire building or whether Copycat's counsel had, in fact, admitted that Copycat intended to proceed unlicensed, Copycat's counsel's remarks showed that Copycat did not plan to keep Walke's apartment vacant but instead wanted to rent it to a new tenant. This exchange demonstrates that Copycat very much intended to remain in the residential leasing business.

Allowing Copycat to evict Petitioners in a tenant holding over action under RP § 8-402 without a license essentially renders the licensing requirement of Baltimore City Code, Art. 13, § 5-4(a) meaningless and defeats its purpose of ensuring that rental properties are fit to live in. As a result of the majority opinion, Copycat and other landlords will have very little incentive to get licenses, which would require bringing rental properties up to

---

of the building, has never had a license and has operated as a landlord renting units in an apartment building in Baltimore City without a license.

- 2 -

code.[2]  To be sure, there are statutes that allow tenants, who have the wherewithal, to seek recourse from abusive landlords or uninhabitable rental property conditions, *e.g.*, the rent escrow statute (RP § 8-211), the anti-retaliation statute (RP § 8-208.1), and the Maryland Consumer Protection Act (Md. Code Ann., Com. Law (1975, 2013 Repl. Vol., 2021 Supp.) § 13-101, *et seq*).  These statutes are available, however, to provide avenues of potential remedy once a tenant has suffered an actionable injury by living in a rental property that may be plagued with problems.  The rental license requirement is different.  A rental license is designed to prevent rental property from being maintained in an unsafe and uninhabitable manner in the first place and ensure that rental property is offered and maintained in conformity with housing code requirements to prevent injury to tenants.  The suggestion that a landlord should be permitted to evict tenants in a tenant holding over action under RP § 8-402 without obtaining a rental license regardless of whether the landlord intends to re-rent property because, if injured, tenants have statutory remedies reinforces the conclusion that as a result of the majority opinion, there will be little incentive for landlords to actually obtain licenses and comply with housing code requirements.  And tenants will be vulnerable to living in hazardous, uninhabitable conditions, which the licensing requirement was intended to prevent.

Citing an article that was written about the Copycat building over nine and a half

---

[2]Although there are penalties prescribed in the Baltimore City Code for a landlord's failure to obtain a rental license, see Balt. City Code, Art. 13, §§ 5-15, 5-25, 5-26, the effectiveness of the penalties depends on enforcement of the Code provisions.

years ago in March 2012,[3] the majority opinion paints a rosy picture of the building as a seemingly ideal residence for artists and musicians[4] and points out that the tenants in the instant cases did not make complaints about habitability.  See Maj. Slip Op. at 3 n.2, 5 n.6, 7 n.8.  This view is inconsistent with information that has been recently reported about the condition of the Copycat building and about landlords seeking to use tenant holding over actions to avoid obtaining rental licenses.  More recent articles about the Copycat building are publicly available just as is the nine-and-a-half-year-old article relied on by the Majority.  Based on the older article, the majority opinion states that the Copycat building is "[c]onsidered a landmark in the Baltimore arts community" and that the building is an "industrial warehouse [that] was converted into residential artist lofts that are rented to artists and musicians in the city's Station North Arts and Entertainment District."  Maj. Slip Op. at 2-3 (footnote omitted).

More recent articles, however, indicate that during the COVID-19 emergency, tenants of the Copycat building lost the ability to pay rent and, according to the tenants, the owner of the building began taking them to what is known as "tenant holding over court,

---

[3]John Asante, P*eek Inside The Copy Cat Building: Where Baltimore Artists Work — And Live*, NPR (Mar. 22, 2012), available at https://www.npr.org/sections/pictureshow/2012/03/22/149061691/peek-inside-the-copy-cat-building-where-baltimore-artists-work-and-live [https://perma.cc/2XTU-L2E3].  As the majority opinion notes, "[a]ccording to the citations issued by Baltimore City, the Copycat building is improved with 58+ dwelling units."  Maj. Slip Op. at 3 n.2 (cleaned up).
[4]The article the majority opinion cites describes the Copycat building as follows: "The six-floor Victorian style building was converted to residential housing for artists and musicians in which the residents are free to design their loft spaces as they choose.  In any given room you might find a skate ramp, a band rehearsing, a photo studio, a sculpture in progress."  Maj. Slip Op. at 3 n.2 (cleaned up).

through which [Copycat] can circumvent both state and federal moratoriums on residential evictions for failure to pay rent." Hallie Miller, *During Maryland rent moratorium, more landlords using legal 'loophole' as means to evict*, The Baltimore Sun (Dec. 30, 2020), https://www.baltimoresun.com/business/real-estate/bs-bz-maryland-tenant-holding-over-20201230-ji4gzcz7qbe2hcks5spifdi3dq-story.html. "In tenant holding over court, a landlord can take action against a tenant whose lease has expired, without having to provide a codified reason for not extending or renewing the lease." Id. "Tenant advocates and legal experts said the recourse functions as a loophole for landlords seeking to evict during the public health crisis[.]" Id.[5] In Velicky, the Public Justice Center, the Homeless Persons Representation Project, Inc., and the Pro Bono Resource Center of Maryland filed an amicus brief in which they argue that "[t]his case beckons this Court's attention to the use of [tenant holding over] actions as a work-around for unlicensed landlords to demand illegal rent on threat of eviction, and follow through with evicting tenants[.]"

Permitting Copycat to evict Petitioners in a tenant holding over action under RP § 8-402 without a license creates a loophole to the licensing requirement in that unlicensed

---

[5]According to *The Baltimore Sun* article, "Baltimore Housing spokeswoman Tammy Hawley said [Copycat] did not receive a rental license in 2020 due to outstanding violation notices issued on the CopyCat property, including inadequate lighting and ventilation and improperly constructed lofts." Hallie Miller, *During Maryland rent moratorium, more landlords using legal 'loophole' as means to evict*, The Baltimore Sun (Dec. 30, 2020), https://www.baltimoresun.com/business/real-estate/bs-bz-maryland-tenant-holding-over-20201230-ji4gzcz7qbe2hcks5spifdi3dq-story.html. The inclusion of information from *The Baltimore Sun* article about the Copycat building is not meant to imply that this Court or any court has taken judicial notice of the information pursuant to Maryland Rule 5-201 or that the information is part of the record in the cases. The information is included in the dissent to provide balance.

landlords will be able to collect an indefinite amount of rent from holdover tenants despite not having the license that is legally required to collect rent. Copycat is incorrect in suggesting that, in a tenant holding over action under RP § 8-402, a landlord can obtain only possession, not rent. Tenant holding over actions under RP § 8-402 are not just about possession—the landlord can also obtain all of the rent for the entirety of the holdover period, no matter how long it lasted. RP § 8-402(a)(2) expressly provides that, in a tenant holding over action under RP § 8-402, "[t]he damages awarded to a landlord against the tenant . . . may not be less than the apportioned rent for the period of holdover at the rate under the lease." Nothing in the statute limits the amount of rent that a court can award a landlord in a tenant holding over action under RP § 8-402. A landlord could obtain months' or even years' worth of rent, despite not having a license during any part of the holdover period. By way of example, an unlicensed landlord could maximize the amount of rent that it could collect by renting out an apartment with a short-term written lease, allowing the tenant to hold over, continuing to charge rent, and using a tenant holding over action under RP § 8-402 to get both possession and any rent due during the holdover period.[6]

---

[6]In Velicky, the written lease expired on July 31, 2018, and Velicky became a month-to-month tenant thereafter. On April 30, 2020, Copycat sent Velicky written notice of termination of Velicky's month-to-month tenancy and a sixty-day notice to vacate the premises, meaning that Velicky had been a tenant holding over for almost two years and would have been liable for any rent that had accrued during the time period. Under the Majority's holding, Copycat, an unlicensed landlord, could recover any rent due from Velicky from August 2018 to approximately June 30, 2020 in a tenant holding over action. In Walke, Copycat did not offer Walke a written lease. Because there was no written agreement, Walke's tenancy was one year from the date of first occupancy—*i.e.*, from March 6, 2019 to March 5, 2020. Copycat sent Walke written notice of termination of his month-to-month tenancy and a sixty-day notice to vacate his apartment as of August

As a result of the majority opinion, tenant holding over actions under RP § 8-402 may be used by unlicensed landlords to enforce rent obligations instead of summary ejectment actions under RP § 8-401, in which licenses are required pursuant to our holding in McDaniel v. Baranowski, 419 Md. 560, 563, 19 A.3d 927, 929 (2011). Copycat all but acknowledged as much in June 15, 2020 e-mails to Petitioners in which Copycat demanded rent from Petitioners, expressly threatened to evict them, and stated:

> ONLY Rent Court and apartment buildings whose mortgage is Federally financed are part of the "Eviction Moratorium". We use Tenant Holding Over Court and our mortgage is NOT federally funded. The Rent Strike website clearly lists by zip code, each apartment building that cannot participate in evictions. We are NOT included in that listing. Hence, there will be no delay on our end as soon as courts reopen.

(Capitalization in original). In referring to "Rent Court" as distinct from "Tenant Holding Over Court[,]" Copycat clearly indicated that it uses tenant holding over actions under RP § 8-402 instead of summary ejectment actions under RP § 8-401. It is evident that Copycat contemplated in advance that tenants would hold over and remain subject to the requirement to pay rent without the need for Copycat to obtain a license and keep the premises habitable, as required under our holding in McDaniel to prevail in a summary ejectment action under RP § 8-401. Indeed, Velicky's lease contained a provision titled "TENANT HOLDING OVER" stating that, if Velicky did not surrender the apartment upon the termination of the lease, Velicky would "become a tenant from month to month"—*i.e.*, a holdover tenant—and would still be required to pay rent every month at a

---

2020. Thus, under the Majority holding, Copycat could recover from Walke in a tenant holding over action any rent due from March 5, 2020 to August 2020 while not being licensed.

minimum at the rate that applied just before the lease terminated.[7]

In the same vein, at oral argument in <u>Velicky</u>, Copycat's counsel indicated that he had recently gotten calls from potential clients concerning matters that the Court's decision in the case would affect. It would appear that Copycat is not the only unlicensed landlord that may potentially want to use tenant holding over actions under RP § 8-402. In my view, a holding from this Court stopping improper end-runs around the license requirement mandated by <u>McDaniel</u> would have vastly broader application than a holding allowing an unlicensed landlord to obtain possession of an apartment in a tenant holding over action under RP § 8-402 on the theory that a landlord may have a reason to regain possession of the apartment, other than collecting rent as damages and leasing the apartment to a new tenant without a license.

The record in both of the instant cases is devoid of any indication that Copycat plans to sell or repurpose the apartment building—*i.e.*, to gain possession of the building and get out of the residential leasing business. In other words, the record lacks any evidence that Copycat will not continue to be a landlord subject to the license requirement and continue renting the apartments at issue in the future. Surely, if it had such plans, Copycat would

---

[7]The lease provision states in part:

> If the tenant shall not immediately surrender possession of the premises at the termination of this lease, the tenant shall become a tenant from month to month, provided rent shall be paid (in advance) to and accepted by the landlord at the rate of rental payable hereunder just prior to the termination of this lease plus the greater of 200% or the amount as set by the courts: but unless and until the landlord shall accept such rental from the tenant, the landlord shall continue to be entitled to re-take possession of the premises without any prior notice whatever to tenant.

- 8 -

have brought them to our attention. The sheer size of the building offers confirmation that Copycat has no plans to leave its widescale rental business. The apartment building contains fifty-eight dwelling units and eighteen rooming units, sits on a lot whose area is more than 54,000 square feet, has two different addresses on two different streets, and has five floors in one section and six floors in another. The large capacity of the apartment building underscores both the potential risk of allowing Copycat to continue operating without a license and the circumstance that Copycat has no plans to gain possession of the premises and repurpose the building.

More importantly, even in a scenario in which an unlicensed landlord does not want to bring an apartment building up to code because the landlord plans to repurpose the building—which, again, is not the case here—an unlicensed landlord may regain possession of premises after a lease expires by means other than a tenant holding over action under RP § 8-402. Copycat is wrong in contending that a tenant holding over action under RP § 8-402 is the only action in which an unlicensed landlord may obtain possession of premises from a tenant holding over. An unlicensed landlord may also obtain possession of premises from a tenant holding over in an ejectment action under the common law. Statutory landlord-tenant actions—such as summary ejectment actions under RP § 8-401, tenant holding over actions under RP § 8-402, and actions for breach of lease under RP § 8-402.1—are "alternatives to" ejectment actions under the common law. Shum v. Gaudreau, 317 Md. 49, 59, 562 A.2d 707, 712 (1989). RP § 8-402(a)(4) states that "[n]othing contained herein is intended to limit any other remedies which a landlord may have against a holdover tenant under the lease or under applicable law." RP §§ 8-401 and

8-402 became part of the Real Property Article in 1974, see 1974 Md. Laws 347, 349 (Ch. 12, S.B. 200), RP § 8-402.1 has existed since 1978, see 1978 Md. Laws 1643 (Ch. 478, S.B. 570), and landlords have still been able to file ejectment actions under the common law in the decades since then.

We have repeatedly recognized that the elements of an ejectment action under the common law are that the plaintiff "must have the legal title to the land and must have the right of possession." Janoske v. Friend, 261 Md. 358, 364, 275 A.2d 474, 477 (1971) (citation omitted); see also Fertitta v. Bay Shore Dev. Corp., 252 Md. 393, 398, 250 A.2d 69, 73 (1969) ("In this State it is well settled that, in actions of ejectment, the plaintiff must show that he has a legal title, and the right of possession in the land." (Cleaned up)); Lannay's Lessee v. Wilson, 30 Md. 536, 546 (1869) ("To maintain the [ejectment] action, the claimant must be clothed with both the legal title, and the immediate right of possession. These are the essential conditions of success." (Citation omitted)); *Ejectment*, Black's Law Dictionary (11th ed. 2019) ("The essential allegations in an action for ejectment are that (1) the plaintiff has title to the land, (2) the plaintiff has been wrongfully dispossessed or ousted, and (3) the plaintiff has suffered damages.").

As their similar names suggest, an ejectment action under the common law and a summary ejectment action under RP § 8-401 have two remedies in common—namely, recovery by a landlord of the premises that a tenant is occupying as well as rent. As we observed in Blevins v. Mullan Contracting Co., 235 Md. 188, 193, 201 A.2d 348, 351 (1964), both possession and damages "are recoverable in ejectment." In Brown v. Hous. Opportunities Comm'n of Montgomery Cty., 350 Md. 570, 578, 714 A.2d 197, 200 (1998),

- 10 -

we explained that, "[a]lthough initially designed to allow an ousted tenant to recover possession," ejectment actions under the common law "became, in time, usable by landlords as well, to recover possession from their tenants." (Footnote omitted). This contradicts the assertion that, if we applied our holding in McDaniel to tenant holding over actions under RP § 8-402, unlicensed landlords will have no way to obtain possession of premises from tenants holding over. The majority opinion states:

> [A]lthough a common law ejectment action may, in theory, still exist in the landlord-tenant context as a possible alternative to the statutory remedies, we have found no Maryland cases in which common law ejectment has been utilized by a property owner to recover possession of a residential property from a tenant after the conclusion of a tenancy.

Maj. Slip Op. at 17. In my view, this is likely so because landlords, both licensed and unlicensed, have been able to use statutory tenant holding actions under RP § 8-402 to obtain both rent and possession of property. The majority opinion will pave the way for unlicensed landlords to continue to do so.

On a related note, Copycat is wrong in arguing that McDaniel is distinguishable from the circumstances of the instant cases because the landlord in that case attempted to enforce a contract—*i.e.*, the lease—whereas Copycat is simply seeking possession of Petitioners' apartments after the leases have terminated. In McDaniel, 419 Md. at 583-85, 19 A.3d at 941-42, we held that, just as a builder cannot obtain a mechanic's lien without a license to operate the builder's business under Harry Berenter, Inc. v. Berman, 258 Md. 290, 293, 265 A.2d 759, 761 (1970), a landlord cannot prevail in a summary ejectment action under RP § 8-401 without a license to operate a rental dwelling where such a license is required by local ordinance. To be sure, we pointed out "that the failure to obtain a

- 11 -

license as required by local ordinance ordinarily renders the contract invalid and unenforceable." Id. at 583, 19 A.3d at 941. But, in McDaniel, we addressed contracts out of necessity because the case involved a lease. Our decision was based not only on the existence of the lease, but also on the principle that requiring landlords to be licensed would assure compliance with local habitability ordinances. We determined that the relevant sections of the Anne Arundel County Code were "designed to insure the safety and habitability of the premises, namely that the dwelling is clean, sanitary, fit for human occupancy, and in compliance with . . . State and County law." Id. at 564-65, 19 A.3d at 929-30 (cleaned up).

Similarly, here, under Baltimore City Code, Art. 13, § 5-6, a license to operate a rental dwelling cannot be issued or renewed unless the premises have passed an inspection, are in compliance with all laws and regulations concerning lead-based paint, and are not subject to any non-abated violation notice or order issued under the Baltimore City Building, Fire, and Related Codes Article. Our holding in McDaniel had the result of protecting tenants from the potential hazards of premises that are not maintained in accordance with local habitability laws. There is no valid reason not to provide tenants in tenant holding over actions under RP § 8-402 with the same protections as tenants in summary ejectment actions under RP § 8-401. In any case, to the extent that the majority opinion concludes that our holding in McDaniel depended on the existence of a contract, our holding in McDaniel would still apply in Velicky because Velicky's lease expressly provided that rent would continue to be due if Velicky became a holdover tenant; *i.e.,* the lease in Velicky applied to the tenant holding over period. In addition, the tenant holding

over relationship is based on the existence of there having been a lease, *i.e.*, a contract.

There is no merit in Copycat's apparent attempt to distinguish <u>McDaniel</u> on the ground that, unlike summary ejectment actions under RP § 8-401, tenant holding over actions under RP § 8-402 are not expedited. The expedited nature of summary ejectment actions under RP § 8-401 was but one reason for our holding in <u>McDaniel</u>. In addition, Copycat is incorrect in asserting that tenant holding over actions under RP § 8-402 are not expedited. We have repeatedly expressly recognized that tenant holding over actions under RP § 8-402 are indeed expedited. <u>See</u> <u>Chateau Foghorn LP v. Hosford</u>, 455 Md. 462, 492, 168 A.3d 824, 841 (2017); <u>Brown</u>, 350 Md. at 576-77, 714 A.2d at 200; <u>Johnson v. Swann</u>, 314 Md. 285, 291, 550 A.2d 703, 706 (1988). As we stated of RP §§ 8-401 and 8-402 in <u>Chateau Foghorn</u>, 455 Md. at 492, 168 A.3d at 841:

> The eviction proceedings under both statutes are expedited and summary in nature—in order to secure a judgment in his favor, a landlord need prove only nonpayment of any amount of rent under § 8-401, or a tenant holding over after the expiration of a lease and proper notice to quit under § 8-402.

(Citing <u>Brown</u>, 350 Md. at 576-77, 714 A.2d at 200).

The plain language of RP § 8-402 confirms that tenant holding over actions under RP § 8-402 are expedited, just like summary ejectment actions under RP § 8-401. Like a summary ejectment action under RP § 8-401, a tenant holding over action under RP § 8-402 is brought in the District Court. <u>See</u> RP §§ 8-401(b)(2), 8-402(b)(1)(i). As in a summary ejectment action under RP § 8-401, a jury trial cannot take place in a tenant holding over action under RP § 8-402 unless the amount in controversy is sufficient and the tenant pays rent during the pendency of the action. <u>See</u> RP §§ 8-601, 8-118(a). In both

a summary ejectment action under RP § 8-401 and a tenant holding over action under RP § 8-402, there is a tight deadline for the losing party to appeal to a circuit court—four days in a summary ejectment action under RP § 8-401 and ten days in a tenant holding over action under RP § 8-402. See RP §§ 8-401(h)(1), 8-402(b)(2)(ii). And, in a tenant holding over action under RP § 8-402, upon application of either party, the circuit court must schedule a hearing on an appeal within five to fifteen days. See RP § 8-402(b)(2)(iv). As a practical matter, a tenant holding over action under RP § 8-402 is no longer or more complicated than a summary ejectment action under RP § 8-401 in any meaningful way.

In permitting unlicensed landlords to use tenant holding over proceedings under RP § 8-402, the majority opinion concludes the General Assembly, "through its enactment of a comprehensive statutory framework governing residential landlord and tenant relations, has achieved the balance between a landlord's right to recover the landlord's property interest at the conclusion of a tenancy and a tenant's right to safe and habitable housing conditions during the tenancy." Maj. Slip Op. at 1-2.[8] The problem with this is that there is no indication in the plain language of RP § 8-402 that the General Assembly has ever considered whether unlicensed landlords are able to pursue tenant holding over actions

_____

[8]The Majority concludes that its holding would prevent an unreasonable interference with property rights and indicates that it can think of "a myriad of reasons" that a landlord might not renew a lease with a tenant, such as the landlord wanting to sell, demolish, or live in the property. See Maj. Slip Op. at 48 & n.28. The reality is that none of this speculation applies to the facts of these cases. The Majority's determination that there is no reason to judicially alter the balance between a landlord's right to repossess property after the end of a tenancy and tenant's right to safe and habitable living conditions is based largely on circumstances that do not exist in either case before the Court and are purely hypothetical in nature.

- 14 -

where a license is required by local ordinance. In light of the Majority's holding, though, it may be that the General Assembly will want to review the issue of whether unlicensed landlords should be able to use tenant holding over actions under RP § 8-402 to recover rent and possession of property and circumvent local licensing requirements that ensure the safety and habitability of rental properties.

Overall, adopting Copycat's position allows unlicensed landlords to circumvent our holding in McDaniel by obtaining rent as damages and possession of rental property in a tenant holding over action under RP § 8-402, without having the license that is legally required to lease property and collect rent. This loophole presents an obvious risk of danger to tenants, as unlicensed landlords may now use tenant holding over actions under RP § 8-402 to recover rent and possession of property and lease the property again, with little incentive to eliminate hazards on the premises and obtain licenses.

For the above reasons, respectfully, I dissent.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/1a21cn.pdf